NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELVIN RAY LOVE, | Civil Action No. 17-1036 (BRM) (DEA) |
| Plaintiff, | |
| v. | **OPINION** |
| JOHN DOES, et al., | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss (ECF No. 54) filed by Defendants George Hanuschik and Mrs. Zimmerman, seeking to dismiss Plaintiff Kelvin Ray Love's ("Plaintiff") Third Amended Complaint (ECF No. 45). Having reviewed the filings submitted in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons sets forth below, and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED** and the Motion to Strike is **DENIED**.

**I. BACKGROUND**

**A. Factual Background**

This action arises out of a series of incidents that occurred on or about December 2011 through May 2015, while Plaintiff was an inmate at the New Jersey State Prison in Trenton, New Jersey. (ECF No. 45.) In December 2011, Plaintiff "submitted a request pursuant to ACA 10A: 17-5.9(d) to Imam Suluki . . . , the then New Jersey State Prison Chaplaincy Supervisor, asking

that I be provided a weekly Sabbath day diet, having any choice of items to the discretion of the prison." (ECF No. 45 at 6.)

Approximately one month later, on January 10, 2012, Imam Suluki informed Plaintiff that his request has been denied because his request "was not according to Jewish law." (*Id.*) Imam Suluki also informed Plaintiff that his request had been forwarded to the Religious Issues Committee ("RIC"). (*Id.*) Plaintiff followed up with Imam Suluki about the status of the RIC review three times in the months following the initial denial. (*Id.* at 6-7.) On May 15, 2012, Imam Suluki indicated that he did not have any information about the RIC's review of Plaintiff's request. (*Id.* at 7.)

Plaintiff subsequently sent correspondence to Director Hicks requesting follow up information regarding his dietary accommodation request to the RIC. (*Id.*) Shortly thereafter Plaintiff received a response from Cindy Ford, Coordinator Inmate Correspondence Unit advising Plaintiff that his correspondence had been forwarded to New Jersey State Prison Administrator, Charles Warren. (*Id.*)

Although Plaintiff does not specify the start date of the alleged conduct that resulted in the aforementioned grievances, he alleges the prison's failure to provide him an adequate kosher diet resulted in his suffering from nutritional deficiencies. (*Id.* at 8-9.) He contends that, between March 2013 through February 2014, he suffered a twenty-pound weight loss as a result of the inadequate dietary provisions. (*Id.* at 9.) He alleges Defendants George Hanuschik and Christine Vaughan, "Cook House ITI's,"[1] provided kosher meals that were smaller portions because "there is no set standard menu for the Kosher diet as there is with all the other common fare diets served to the regular non-kosher prisoners." (*Id.* at 10.) Moreover, he alleges Defendant Hanuschik, as

---

[1] Defendants indicate that "ITI" is an Institutional Training Instructor. (ECF No. 54-1 at 5.)

supervisor, "is aware of the ITI's practice of arbitrary and capricious selection but turns a blind eye to this practice." (*Id.*)

Plaintiff's dietary grievance stems not only from the quantity and quality of the food but also from the Defendants' alleged refusal to comply with his request that he be provided non-perishable foods before the start of the Sabbath, which he can consume once Sabbath ends. (ECF No. 45 at 7.)

> I sincerely believe that I should and must observe the seventh day Sabbath (day of rest) on which, to the best of my circumstances, I refrain from all work and observe a prohibition of not eating, on the Sabbath, foods prepared, cooked and or served to be on the Sabbath. Which my interpretation of the Holy Scriptures dictates I must observe from Saturday evening til [sic] Sunday evening, as I have consistently observed from before the year 2000. On or around what time the 8th Circuit Court of Appeals affirmed the decision /findings of the U.S. District Court of Arkansas directing the Arkansas Dept. of Corrections to provide me bread and peanut butter on Saturdays, before evening, to be consumed by me on Sundays during my seventh-day Sabbath.

(*Id.* at 5-6.)

Additionally, Plaintiff provides that he asked that he not receive meals on Sundays. (*Id.* at 7-8.)

Plaintiff also alleges he suffered retaliation in the form of disciplinary sanctions[2] as a result of lawsuits he filed in New Jersey Superior Court. (*Id.* at 15.) Plaintiff does not elaborate on what the specific subject of those court filings were other than that they were "civil law suits against NJSP employees (Docket Nos. L 558-15; L 559-15) for civil rights violations suffered while in Ad-Seg." (*Id.*) Plaintiff alleges that the disciplinary sanctions were in response to his court filings despite the defendants' pretext. In his complaint, he states, in pertinent part:

---

[2] Defendants indicate Plaintiff was charged with Disciplinary charge .254- Refusing a work or housing assignment in violation of N.J. Admin. Code § 10A:4-4.1. (ECF No. 54-1 at 6.)

On or around the years of 2013; 2014, because of two fights I had while in general population (gp) (Unit 2-A; Unit 2-R (Mess Hall)), I feared for my life and or safety, to return to gp from Administrative Segregation (Ad-Seg). Before my Ad-Seg sentence was completed I asked the Ad-Seg Unit Offices and sergeants to be put on Protective Custody (PC). I submitted numerous Grievances requesting PC and I appealed directly to SID and the New Jersey State Prison (NJSP) Administration for PC status. They all refused me PC status, so upon my release from Ad-Seg I refused to move to 1-Right Unit because I feared for my safety in gp. For refusing to move I was charged with an infraction and placed into detention, where I continued to request PC. Finally I was placed on temp. PC status and moved to a Management Control Unit (MCU) for several days, where I was given a hearing, asked to sign documents acknowledging my request for voluntary PC and told that I would not be recommended for PC status. At this point I had to choose between continuing to refuse to return to gp (which meant indefinite Ad-Seg time) or take my changed in gp. Because I had an Arkansas Habeas Corpus Petition to perfect I chose gp where I could research etc. in the law library, which I could not do in Ad-Seg. A change at possible freedom was worth risking my life.

In gp, for over a year or more straight I was housed on Unit 4C North in cell #28 (single-lock[3]). While in cell #28 I filed (submitted for filing two (2) civil law suits against NJSP employees (Docket Nos. L 558-15; L 559-15) for civil rights violations suffered while in Ad-Seg. On the morning of 5-20-15 I was moved to unit 1-Right (1-R). While on 1-R I overheard the Unit Offices saying that "it doesn't matter because he will be in detention soon anyhow." On the morning of 5-22-15 I was told that the lieutenant had called and told me to pack up to be moved to 4-C or 4A. I elected 4-C and when I got to 4-C I was ordered to lock in Cell # 5 (double-lock[4]). I refused and was placed in detention. I went to disciplinary court 5-29-15 and Hearing Officer (H/O) Mrs. Zimmerman gave me a 90 days suspended sentence (max. amount for violation). Upon my release from detention I again refused to double-lock, went to court and received 180 days. The previous 90 days which were suspended plus the 90 days just received, to run consecutive.

---

[3] Defendants submit in their brief that "single-lock" is a single occupancy cell. (ECF No. 54-1 at 6.)

[4] Defendants submit in their brief that "double-lock" is a double occupancy cell. (ECF No. 54-1 at 6.)

4

> While in detention, the first time 5-26-15 I received legal mail from the Mercer County Superior Court, postdated 5-19-15 (the day before I was moved to 1-R). In this correspondence were two (2) ORDERS from the Superior Court ruling that I had 45 days from 5-8-15 to pay a $22.62 partial filing fee on each of the two separate complaints (L 558-15; L 559-15) or they would be dismissed without prejudice. Someone in the NJSP mailroom the morning of 5-20-15, or previous to same; upon receipt of my legal mail from the court either opened my legal mail or accessed the public records of the Court's filing of its then pending ORDER of DISMISSAL, and then notified pertinent custody and or other NJSP stay on or before the morning of 5-20-15 who then contrived to and in fact did retaliate against me by moving me to 1-R with intent of locking me up in Ad-Seg wherein I receive no State Pay, my sole source of income. Thereby inhibiting/preventing me from meeting the courts deadline to pay the partial filing fee.

(*Id.* at 15-16.)

Plaintiff further alleges that, at his hearings, he presented Defendant Zimmerman with the letters from the state court and he expressed his concern that his current housing assignment was in retaliation for the pending court cases:

> She ruled on my first hearing that I submitted no evidence showing that custody was retaliating, and at my second hearing she discounted the evidence of the then pending lawsuits entirely, again. When I tried to show them to her, she emphatically stated to me that "the lawsuits don't matter."

(*Id.* at 18.)

The record is silent as to whether Plaintiff appealed the disciplinary hearing findings or the sanctions.

### B. Procedural Background

In the wake of the aforementioned incidents, Plaintiff filed a complaint, amended complaint and a second amended complaint against multiple John Does, George T. Hanuschik, Steven Johnson, Rev. W. Wilcox, Mrs. Ryan, Christine Vaughan and Zimmerman in New Jersey state court. (ECF No. 1.) Those state court filings were brought to this Court's attention by

Defendants' Steven Johnson, George Hanuschik, Warren Wilcox and Mrs. Zimmerman's filing of a Notice of Removal. (*Id.*) According to Defendants' notice of removal, Defendant Ryan, although served with the second amended complaint in state court, filed a motion to dismiss that was granted by the state court. (ECF No. 1 at 2.) Defendants Steven Johnson, George Hanuschik, Warren Wilcox and Mrs. Zimmerman were served with the second amended complaint on January 17, 2017. (*Id.*) Those defendants subsequently filed the notice for removal pursuant to 28 U.S.C. §§§ 1441(a), 1443 and 1146(b), arguing that Plaintiff's federal claims should be brought pursuant to 42 U.S.C. § 1983. (*Id.*)

Plaintiff filed a motion to remand opposing Defendants' notice of removal, arguing that the removal was "invalid" because Defendants waived removal by failing to file the motion to remove within the "30-day time frame" as provided in 28 U.S.C. § 1441(c), and that Defendants conspired with the New Jersey Superior Court clerk to "summarily, arbitrarily, prematurely" have Plaintiff's action dismissed. (ECF No. 6 at 4-5.) This Court denied Plaintiff's motion to remand on November 28, 2017. (ECF Nos. 26-27).

Plaintiff's third amended complaint was filed on March 27, 2018. That complaint omitted defendants Johnson and Wilson and added Charles E. Warren, Jr. and Imam Rasul Suluki. (ECF No. 45.) The Court granted Plaintiff's motion for leave to file a third amended complaint and also ordered that the Clerk of the Court issue summonses for Defendants Charles Warren, Jr. and Imam Suluki. (ECF No. 44.) The summons for Charles Warren, Jr. and Imam Suluki were returned unexecuted. (ECF No. 55.) In his third amended complaint, where Plaintiff alleges First, Fifth, Sixth, Eighth and Fourteenth Amendment violations as well as a conspiracy claim, Plaintiff requests injunctive relief as well as monetary and punitive damages. (ECF No. 45.) Plaintiff lists

several John Doe defendants as well as Christine Vaughn, Charles E. Warren, Jr., Imam Rasul Suluki as well as moving defendants George T. Hanuschik and Mrs. Zimmerman. (*Id.* at 1.)

Plaintiff raises First Amendment Free Exercise Clause and Eighth Amendment violations against Defendant Hanuschik.[5] (ECF No. 45 at 8-11.) Additionally, he raises retaliation and conspiracy claims against Defendant Zimmerman. (*Id.* at 14-19.)

Defendants Hanuschik and Zimmerman now move to dismiss for failure to state a claim.[6] (ECF No. 54.) On May 22, 2018, Plaintiff filed a response in opposition to the motion to dismiss. (ECF No. 59). On June 11, 2018, Defendants Hanuschik and Zimmerman filed a reply brief. (ECF No. 63.) On July 18, 2018, Plaintiff filed a "request for default" against Steven Johnson and W. Wilcox. (ECF No. 67.) Steven Johnson and Warren Wilcox filed a response to that request arguing that they were no longer parties to the suit as Plaintiff's third amended complaint did not include them as defendants. (ECF No. 68.) Plaintiff filed a "motion to amend response in opposition" on August 15, 2018, (ECF No. 70), which was denied by the Court on August 17, 2018. (ECF No. 71.) On November 8, 2018, Plaintiff filed a "suggestion to substitute Bruce Davis and Imam J. Eichabi" as well as a request for default against Bruce Davis and Imam J. Elchabi. (ECF Nos. 72-73.) The Clerk of the Court advised Plaintiff that his request for default against Davis and Eichabi could not be granted because the persons are not named parties in the case. Additionally, Plaintiff

---

[5] Plaintiff also briefly raises a Religious Land Use and Institutionalized Persons Act ("RLUIPA") violation against Hanuschik in his response. (ECF No. 59 at 23.) However, this Court will not consider claims that were not alleged in the complaint. *See Bayer AG v. Schein Pharm., Inc.* 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (declining to address issue raised for the first time in reply brief).

[6] Defendants do not address Plaintiff's claims of discrimination based on his "special needs" status, nor do they address Plaintiff's Equal Protection Clause claims, as those claims were directed at other defendants. (ECF No. 54-1 at 4.)

has two "motion[s] to substitute party" currently pending before Magistrate Judge Arpert. This opinion does not address those motions to substitute. (ECF Nos. 74-75.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations. *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)). The pleadings of *pro se* plaintiffs are liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must alleged sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)(citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. DECISION**

Defendants raise five arguments in support of their motion to dismiss. (*See* ECF No. 54-

1.) First, Defendants argue that Plaintiff's claims should be dismissed to the extent that they are against defendants in their official capacities. (*Id.* at 8-9.) Second, Defendants argue that the claims against Defendant Zimmerman in her individual capacity are barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 9-10.) Thirdly, Defendants argue that Plaintiff's claims against Defendant Hanuschik should be dismissed because the third amended complaint fails to allege any personal involvement. (*Id.* at 11-12.) Fourth, Defendants argue that Plaintiff's claims should be dismissed in accordance with the qualified immunity doctrine. (*Id.* at 12-19.) Finally, Defendants argue that Plaintiff's claims for punitive damages should be dismissed because he failed to make the requisite showing for such relief.[7] (*Id.* at 19-20.)

### A. Retaliation and Conspiracy Claims Against Defendant Zimmerman

Notwithstanding Defendants' multiple arguments in support of their motion to dismiss, Defendants circumvent the issue of whether Plaintiff's pleadings adequately state a claim of retaliation and conspiracy against Defendant Zimmerman. Defendants, as the moving party, bear the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Nonetheless, the Court can still analyze these claims pursuant to this Court's screening powers under 28 U.S.C. § 1915A(b).

In his complaint Plaintiff alleges, *inter alia*, the following: "Mrs. Zimmerman, H/O, conspired with the other defendants in retaliating against me for accessing the courts and filing suit against NJSP employees, by first giving me a 90 day suspended sentence (knowing of and relying on my history of refusing to double lock), in order to later double my Ad-Seg (no pay) time." (ECF No. 45 at 18.)

---

[7] In light of the Court's disposition, Defendants' *Heck*, qualified immunity and punitive damages arguments need not be reached.

### i. Retaliation

To summarize Plaintiff's argument, unidentified prison officials were made aware of the pending state court cases against them by May 19, 2015. The prison officials subsequently ordered that Plaintiff be provided a new housing assignment within twenty-four hours of receiving this information with the knowledge that Plaintiff would not comply with an order to relocate to a double occupancy cell and would avail himself to a disciplinary hearing officer's jurisdiction. The sanction which would prohibit Plaintiff's ability to earn income would consequently disturb Plaintiff's state court proceedings.

A plaintiff alleging retaliation for engaging in protected conduct must demonstrate "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Moreover, the adverse action suffered as a result of engaging in the protected conduct must only be "more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Finally, plaintiffs can prove the third element of a retaliation claim by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834, F.3d at 424. If the plaintiff can sufficiently allege that his engagement in the protected conduct was the motivating factor, then the burden shifts to the defendant who must then show that it would have made the same decision absent the protected conduct. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

Access to the courts qualifies as constitutionally protected activity. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). As stated by the Tenth Circuit:

> This right is one of the privileges and immunities accorded citizens under Article 4 of the Constitution and the Fourteenth Amendment.

> It is also one aspect of the First Amendment right to petition the government for redress of grievances. Finally, the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights.

*Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).

Here, Plaintiff's conduct—filing lawsuits against prison employees—certainly falls within constitutionally protected conduct.

Next, Plaintiff must demonstrate that he was subjected to an "adverse action." This can be demonstrated if the allegedly retaliatory conduct can be determined to deter a person of ordinary firmness from exercising his rights. *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (citation and internal quotation marks omitted). Here, Plaintiff alleges that he was subject to adverse action by being subjected to disciplinary sanctions that included increased detention and an inability to earn income. Therefore, he could not comply with the state court's mandatory filing fees. Plaintiff further alleges in his response:

> Under regular non-constitutionally related situation, Zimmerman may have made the same decision to sentence me for violating N.J. Admin Code § 10A [illegible]. Cf. *Watson*, 834 F.3d at 422 (same decision defense). In my particular case the officers responsible for moving me on 5-20-15 and 5-22-15, TAC 18 at 24, 19 at 36, manufactured a legitimate means to get me before Zimmerman. TAC 17, 18 at 24; 19 at 25. So moving me was within their discretion, and normally related to a legitimate prison interest. But the temporal proximity of their moves subsequent to a year or more of allowing me to single-lock, without moving me. TAC 17 24. Strongly suggest that they would not have made the same decision to move me absent the Superior Court's Order of Waiver, which granted me leave to sue their fellow employees. See TAC 1824.4

(ECF No. 59 at 29.)

The Court construes this as Plaintiff attempting to raise two different adverse actions: (1) the cell reassignment and (2) the disciplinary infractions and sanctions.

12

A plaintiff alleging retaliation can satisfy the "adverse action" requirement by showing the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Rauser*, 241 F.3d at 333 (citation and internal quotation marks omitted).

Defendant Zimmerman does not contest Plaintiff's allegation that he was denied the ability to work as a result of the sanction imposed. Therefore, Plaintiff's financial hardship as a result of the disciplinary sanction may qualify as an adverse action. *See id.* (finding that prisoner's parole denial, transfer to a correctional institutional a significant distance from his relatives, and significant drop in his employment wages was sufficient evidence of an adverse action).

If this Court were to construe Plaintiff's argument to include the cell reassignment as an adverse action as well, Plaintiff has not established how the order to move qualifies as such:

> As an initial matter, prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Therefore, in general, a transfer from one cell or bunk assignment to another is insufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g., Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *21 (D.N.J. Mar. 30, 2012) *aff'd*, 489 F. App'x 544 (3d Cir. 2012) ("Because Smith has no protected constitutional right to a housing assignment, he cannot claim 'adverse action' when his housing assignment was changed."); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *11 (M.D. Pa. Mar. 30, 2012). Rather, a plaintiff must allege that the impact of the housing change was sufficiently negative so as to constitute an adverse action. *See, e.g., Bistrian*, 696 F.3d at 376 (holding that conditions of confinement in a particular prison housing unit may deter a person of ordinary firmness from exercising his First Amendment rights); *Allah*, 229 F.3d at 225 (same).

*Rodriguez v. Hemel*, Civ. No. 15-7980, 2016 WL 1407742, *5 (D.N.J. Apr. 11, 2016).

Here, other than his claim that he has a long-standing fear of being housed in double-occupancy cells because of fear of attack, Plaintiff has not demonstrated how simply being re-

assigned to a double occupancy cell "would deter a person of ordinary firmness" from exercising his constitutional right. Moreover, Plaintiff's complaint is silent about whether the cell he was ordered to move to on May 20, 2015, was a single or double occupancy. (ECF No. 45 at 15.) He provides that two days later, on May 22, 2015, he was once again ordered to re-locate and he was given the option of moving to "4-C or 4-A." (*Id.* at 16.) Plaintiff submits that he "elected 4-C," however, once he arrived there and "was ordered to lock-in Cell # 5 (double-lock)," he refused. (*Id.*) Plaintiff also admits that once he completed a period of detention for the May 22 infraction, he was ordered to go to a double occupancy cell again, and again refused, thereby resulting in a second disciplinary sanction. (*Id.*)

Finally, to demonstrate retaliation, Plaintiff must show the nexus between the protected conduct and the adverse action. *Watson*, 834, F.3d at 424. While Plaintiff refers to the "temporal proximity of their moves" being "subsequent to a year or more of allowing me to single-lock, without moving me," he does not specify the temporal relation between the lawsuit filings and the disciplinary sanction and or the start of his inability to earn income. Plaintiff concedes that, twice in May 2015, he refused to comply with the corrections officer's order to be housed in a double occupancy cell. (ECF No. 45 at 16.) However, he argues that the defendants were aware of his long-standing opposition to being placed in "double-lock" because of "an overwhelming fear of homosexual attack in or out of sleep while double-locked" as well as a prior incident in an Arkansas facility that occurred while he was double-locked. (*Id.* at 17.) According to Plaintiff, his refusal to comply with the housing move was an inevitable response in light of his fear of double-locking. In support of his allegation that Defendants were aware of his court filings prior to his insubordinate conduct, Plaintiff submits that mere days before the first order to move to a double-

lock cell, he overheard the unit officer say, "it doesn't matter because he will be in detention soon anyhow." (*Id.* at 15-16.)

While Plaintiff has not provided enough of a timeline to establish a temporal proximity between the start of his state court filing and the cell reassignment and subsequent disciplinary sanction that suggests that they were retaliatory, he does allege a sufficient temporal proximity between receipt of the state court's correspondence and the cell reassignment. *See Farrell v. Planters Lifesavers Co.* 206 F.3d 271, 280 (3d Cir. 2000) (timing is relevant to causation in retaliation cases). Plaintiff provides that the state court's letter was postmarked May 19, 2015, and that the first cell reassignment was on the morning of May 20, 2015. However, as previously mentioned, the May 20, 2015, reassignment did not result in any insubordination or infraction. It was two days later, on May 22, 2015, that Plaintiff refused to enter a double occupancy cell, after initially choosing to move to that particular housing wing.

Defendant Zimmerman, who is the only moving defendant implicated in Plaintiff's retaliation claim, was the hearing officer that presided over both of Plaintiff's disciplinary hearings in the wake of his refusal to be reassigned cells. Plaintiff admits that he violated the cell reassignment order, therefore undermining his own argument that Zimmerman did not have a justifiable basis for the disciplinary hearing findings and sanctions. Therefore, on the face of the complaint, Plaintiff admits there was a reason for him to be sanctioned. Even when taking a wholistic approach to Plaintiff's claim, his factual allegations do not support the inference of causation. *See Farrell*, 206 F.3d at 280 (quoting *Kachmer v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) ("['Temporal proximity' and 'circumstantial evidence of a pattern of antagonism'] are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.")). Here, Plaintiff's naked assertions that Zimmerman

15

conspired with other prison officials to justify a disciplinary infraction and sanction do not raise an inference of causation.

Moreover, Plaintiff does not provide any basis for his allegation that Defendant Zimmerman was aware of the state court filings because prison mailroom personnel allegedly opened his mail from the state court postmarked May 19, 2015, or that prison personnel accessed the state court's public records. (*Id.* at 16.) Notwithstanding Plaintiff's submission that Defendant Zimmerman became aware of the state court filings after Plaintiff informed her about them at his disciplinary hearings in late May of 2015, he has not sufficiently alleged how Zimmerman's awareness of the state court cases was "a substantial or motivating factor" in the decision to sanction him given his admission that he failed to comply with the order to move. *See Alexander v. Fritch*, 296 F. App'x 867, 874 (3d Cir. 2010) ("[T]he fact that a decision was adverse to a prisoner is not, without more, evidence of retaliation.").

For the foregoing reasons, Plaintiff has failed to state a retaliation claim against Defendant Zimmerman.

### ii. Conspiracy

Plaintiff also claims that Defendant Zimmerman along with unnamed prison employees conspired to prevent him from filing his lawsuits in state court. Plaintiff's complaint has not alleged sufficient facts to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

A plaintiff alleging a § 1983 conspiracy, must show "that two or more co-conspirators reached an agreement for the purpose of depriving constitutional rights under color of State law." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 62, 646 (D.N.J. 2011). As already discussed in the preceding section, Plaintiff's filing a lawsuit certainly qualifies as one of those constitutional rights. Next, Plaintiff must establish "some factual basis to support the existence of the elements

16

of a conspiracy." *Jutrowski*, 904 F.3d at 295. Plaintiff does not provide a single fact that supports the allegation that Zimmerman specifically agreed with any other state actor or any other individual to deprive Plaintiff of his opportunity to meet the state court's filing deadlines. Therefore, Plaintiff has not alleged a claim of conspiracy as well.

### B. Claims against Defendants in their Official Capacities

As for Plaintiff's other remaining claims against the two moving defendants, to the extent that Plaintiff is suing these defendants for monetary damages in their official capacities, he is not entitled to monetary relief under such a theory. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 72-73 (1989). However, a court may grant prospective injunctive relief against officials sued in their official capacities. *Id.* at 92. Therefore, Petitioner's request for injunctive relief against Defendants Hanuschik and Zimmerman in their official capacity will be assessed.

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

First, with respect to Defendant Hanuschik, Plaintiff describes Hanuschik as an "ITI supervisor" who failed to address Plaintiff's grievances about the inadequate diet he was forced to contend with. Plaintiff does not allege any particular personal interaction or correspondence with Hanuschik. Plaintiff has not pled any facts that trace "the challenged action" to Defendant

17

Hanuschik. Therefore, Plaintiff's request for injunctive relief against this Defendant in his official capacity is denied.

Next, with respect to Defendant Zimmerman[8], who was the hearing officer that presided over Plaintiff's 2015 disciplinary hearings, Plaintiff has not pled facts that demonstrate an "actual and imminent" threat of suffering from similar actions by this defendant. Irrespective of Plaintiff's allegations of retaliation, according to Plaintiff's complaint, the disciplinary hearings were in response to isolated incidents where Plaintiff's admitted refusal to comply with the institution's housing assignment spurred the disciplinary hearings and subsequent sanctions. Plaintiff has not alleged that he will have another encounter with Defendant Zimmerman or that he will be subject to further disciplinary sanctions, for that matter. *See Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") Plaintiff has not sufficiently alleged that he is entitled to injunctive relief against Defendant Zimmerman.

Therefore, Defendants' motion to dismiss is granted to the extent that it seeks to dismiss Plaintiff's claims against Defendants in their official capacities.

**C. Plaintiff's Failure to Allege Defendant Hanuschik's Personal Involvement**

Next, Defendant Hanuschik submits that Plaintiff failed to allege Hanuschik's personal involvement in the alleged conduct. (ECF No. 54-1 at 11-12.) Defendant provides that Plaintiff's allegations against Hanuschik are "conclusory and devoid of any facts." (ECF No. 54-1 at 12.) Defendant Hanuschik also argues that Plaintiff has not alleged any facts that support a supervisory liability claim. (*Id.* at 12.)

---

[8] Plaintiff elaborates in his response that his "claim for relief against Zimmerman is for damages only." (ECF No. 59 at 28.)

A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998).

This Court analyzes supervisory liabilities claims using one of two theories. A supervisor can be held liable if they "established and maintained a policy or custom which directly caused the constitutional harm and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). In order to establish a supervisory liability claim, Plaintiff would have to show that the prison official (1) had knowledge of the prisoner's problem, (2) that the official either failed to act or took any ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference, and (3) that a causal connection exists between the official's response and the harm. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) (holding that evidence was insufficient to hold Commissioner of Corrections liable for constitutional violations).

Plaintiff has not specified which theory applies here and has not provided facts that support liability under either. Plaintiff alleges that Hanuschik supervises the ITI and therefore is aware of the inadequate dietary provisions provided to those inmates that follow a Kosher diet. He also alleges that, as supervisor, Hanuschik "is aware of the ITI's practice of arbitrary and capricious selection but turns a blind eye to this practice." (ECF No. 45 at 10.) Therefore, Plaintiff's theory of liability appears to be that Hanuschik is liable in so far that he "participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*,

19

372 F.3d 572, 586 (3d Cir. 2004). However, Plaintiff does not provide how Hanuschik personally violated Plaintiff's rights or directed others to do so.

Consequently, Plaintiff's allegations amount to "conclusory" statements that falls short of a well-pleaded complaint. *Iqbal*, 556 U.S. at 678-79. Accordingly, Defendant Hanuschik's motion to dismiss the individual claims against him is granted to the extent that Plaintiff failed to allege Hanuschik's personal involvement.

## IV. MOTION TO STRIKE

On December 3, 2018, Plaintiff filed a Motion to Strike Defendants' Reply Brief. (ECF No. 76.) Plaintiff argues that he never received a copy of the Defendant's June 11, 2018, filing. Defendants submit in their Response to the Motion to Strike that they sent a copy to Plaintiff via regular mail on June 11, 2018, as indicated in their certificate of service. (ECF No. 77.) Defendant's certificate of service indicates that a copy was mailed to Plaintiff on June 11, 2018. (ECF No. 63-1.) Additionally, Defendants submit that they mailed Plaintiff an additional copy of the Reply Brief in the wake of Plaintiff's Motion to Strike. (ECF No. 77.) Accordingly, Plaintiff's Motion to Strike is **DENIED**.[9]

## V. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 54) is **GRANTED**.[10] An appropriate order will follow.

Dated: January 31, 2019            */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**

---

[9] In any event, Defendant's two-page Reply Brief did not include any new arguments that would have warranted a sur-reply from Plaintiff. *See* L.Civ.R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned.").

[10] In light of the existence of unresolved claims against unserved defendants, the Court will not close the matter at this time.