## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————

KELVIN RAY LOVE,

              Plaintiff,

      v.

JOHN DOES 1-9, et al.

           Defendants.

—————————————————————

Civil Action No. 17-1036 (BRM) (DEA)

**ORDER**

This matter comes before the Court by way of a Motion by Plaintiff for leave "to Supplement and/or Amend [the] 4th Amended Complaint." *See* ECF No. 126-1. Plaintiff seeks leave to add new parties and claims that he argues relate back to the original Complaint. *Id.* at 1-2. Defendants filed a Brief in Opposition [ECF No. 136], and Plaintiff filed a Reply [ECF No. 141]. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in the Superior Court of New Jersey, Mercer County, on August 7, 2015. ECF No. 136 at 1. Plaintiff amended the Complaint filed in state court twice. *See* ECF No. 1-1; ECF No. 136 at 2. Plaintiff's Second Amended Complaint ("SAC") added Defendants Hanuschik, Johnson, Wilcox, and Zimmerman. ECF No. 1-1 at 2-3. After Plaintiff served Defendants Hanuschik, Johnson, Wilcox, and Zimmerman in the state court action, they removed the action to this Court on February 15, 2017. *See* ECF No. 1.

In the SAC, Plaintiff alleged that he was placed in administrative segregation, the conditions of which amounted to deliberate indifference. ECF No. 1-1 at 6-7. Plaintiff also alleged that the head of the Religious Issues Committee ("RIC") at the New Jersey State Prison ("NJSP") refused to provide him with Kosher foods in accordance with Plaintiff's religious dietary

restrictions. *Id.* at 8-10. Plaintiff appeared to identify the head of the RIC as "Director Hicks." *Id.* at 9. Plaintiff also alleged that Defendants Hanuschik and Vaughan participated in refusing to give him Kosher foods, violating Plaintiff's First and Eighth Amendment rights. *Id.* at 11-16. Plaintiff also alleged retaliatory conduct on behalf of certain officers as a result of the civil actions filed by him against employees of the New Jersey Department of Corrections ("NJDOC"). *Id.* at 17.

Plaintiff filed a Motion to Amend on December 28, 2017, seeking leave to amend the SAC. *See* ECF No. 34. The proposed Third Amended Complaint ("TAC") was nearly identical to Plaintiff's SAC. *See* ECF No. 1-1; *see also* ECF No. 34 at 4-23. The only differences were that Plaintiff removed Defendant Ryan as a named Defendant and replaced Defendants Wilcox and Johnson with Defendants Warren and Suluki. *See* ECF No. 34 at 4-23. Plaintiff argued that he inadvertently omitted Defendants Warren and Suluki from the SAC. *Id.* at 28. Plaintiff again referred to his communication with "Director Hicks" under the section "DEFENDANT: Head of the RIC"[1] in the proposed TAC. *Id.* at 10. Defendants took no position regarding Plaintiff's Motion to Amend but reserved the right to move to dismiss the TAC. ECF No. 37 at 1. The Court granted Plaintiff's Motion [ECF No. 34] on March 27, 2018. *See* ECF No. 44.

Shortly thereafter, Defendants moved to dismiss Plaintiff's TAC because Defendants claimed that Defendants Johnson and Wilcox were no longer parties, and Defendants Warren and Suluki had yet to be served with process. *See* ECF No. 54. Plaintiff then filed a Request for Default against Defendants Johnson and Wilcox and a Request for Default against Defendants Davis and Elchabi. *See* ECF Nos. 67 and 73. On August 9, 2018, the Clerk entered a quality control message regarding Plaintiff's Request for Default against Defendants Johnson and Wilcox, explaining that

---

[1] Plaintiff alleges in this section that "[a]bsent any response from the RIC to the Imam's 1-10-12 referral to them, I on 7-30-12 mailed Director Hicks (as an appeal to the 1-10-12 referral) a copy of the same Sabbath day diet request that I submitted to Imam Suluki on 12-12-11. In response to advice to do so from the Office of the Ombudsman." ECF No. 34 at 10.

the request could not be granted "because the requested parties are no longer defendants in this matter." The Clerk entered a quality control message on November 9, 2018, denying Plaintiff's Requests for Default against Defendants Davis and Elchabi "because the persons named are not parties in this case."

Plaintiff also filed two Motions to Substitute Party [ECF Nos. 74 and 75]. In these Motions, Plaintiff sought, pursuant to Federal Rule of Civil Procedure 25, to substitute "Jane Doe" for Defendant Christine Vaughan and to substitute Defendants Davis and Elchabi for Defendants Johnson and Wilcox. *See* ECF Nos. 74 and 75. On January 31, 2019, U.S. District Judge Brian R. Martinotti granted Defendants' Motion to Dismiss [ECF No. 54], denied Plaintiff's Motion to Strike [ECF No. 76], and granted Plaintiff's Motions to Substitute [ECF Nos. 74 and 75].

As a result of Plaintiff's TAC being dismissed, Plaintiff filed a Motion to Amend [ECF No. 89] the TAC. Plaintiff's proposed Fourth Amended Complaint ("FAC") included several additional claims: First Amendment, Eighth Amendment, Fourteenth Amendment, and RLUIPA violations, a 42 U.S.C. § 1985(1) claim, and a malicious prosecution claim. *See* ECF No. 89. Defendants again took no position on Plaintiff's Motion but reserved the right to file a renewed Motion to Dismiss. ECF No. 91 at 1. The Court granted Plaintiff's Motion on September 13, 2019. *See* ECF No. 103.

On July 15, 2019, Plaintiff filed a Motion seeking leave to serve the State of New Jersey and the NJDOC. *See* ECF No. 101. The Court entered an Order on October 9, 2019, denying Plaintiff's Motion because Plaintiff failed to name the State of New Jersey or the NJDOC in any of his Complaints. ECF No. 109 at 2. Even if Plaintiff had named either entity as a party to this action, neither the State of New Jersey or the NJDOC is a person amendable to suit under 42 U.S.C. §§ 1983 and 1985. *Id.*

Plaintiff then sought an Order extending his deadline to serve Defendants Warren and Suluki. *See* ECF No. 110. The Court entered an Order on October 24, 2019, requiring that either the NJDOC file, *ex parte* and under seal, the last known addresses of Defendants Warren and Suluki or that the New Jersey Attorney General agree to accept service on behalf of Defendants Warren and Suluki. ECF No. 113 at 3. The last known addresses for Defendants Warren and Suluki were filed, under seal, on October 30, 2019. *See* ECF No. 114.

On January 2, 2020, Plaintiff moved for an Order revising the Court's Order [ECF No. 113] to direct the NJDOC to provide the last known addresses of Defendant Christine Vaughan and Department of Corrections Commissioner, Marcus Hicks. ECF No. 123 at 1. The Court directed the NJDOC to provide the last known addresses for Ms. Vaughan and Mr. Hicks. *Id.* at 3. Defendants explain that on February 5, 2020, the Office of the Attorney General for the State of New Jersey accepted service of Plaintiff's FAC on Mr. Hicks's behalf and filed Ms. Vaughan's last known address under seal. ECF No. 136 at 18. The next day, Plaintiff filed this Motion [ECF No. 126].

## II.    LEGAL STANDARDS

A party may amend its pleading once as a matter of right within either (1) twenty-one days of serving it; or (2) where the pleading is one to which a responsive pleading is required, the earlier of twenty-one days following service of the responsive pleading or a motion to dismiss. Fed. R. Civ. P. 15(a)(1). Once those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). In determining a motion

for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The last *Great Western* factor considers whether the proposed amendment would be futile. As the *Great Western* Court concluded, "[u]nder Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great Western*, 615 F.3d at 175. Futile "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (*quoting In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007). An amendment is futile if it "is frivolous or advances a claim...that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To evaluate futility, the Court uses "the same standard of legal sufficiency" as applied to a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

To determine if a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put succinctly, the alleged facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In determining futility, the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon the same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.   ARGUMENTS

#### a.   Plaintiff's Arguments

Plaintiff argues that the Court should permit Plaintiff to file the proposed Fifth Amended Complaint because of the Court's liberal policy favoring amendment. ECF No. 126-2 at 2. Essentially, Plaintiff seeks to add several claims that, he argues, relate back to the original Complaint. *See Id.* at 3-7. Plaintiff claims that the proposed claims relate back because the alleged conduct pertains to Defendants' alleged discriminatory pattern of harassment related to Plaintiff's race, religion, and handicapped status. *Id.*

Plaintiff seeks to add claims against certain Mercer County Sheriff's Deputies. *Id.* at 2. Plaintiff argues the SAC [ECF No. 1-1] gave notice of his intent to file suit against the Deputies. *Id.* Plaintiff alleged in the original Complaint that Defendants "locked [him] up" to hinder or deny his access to the courts. *Id.* at 3. Plaintiff now claims that the Deputies took actions that hindered or denied his access to the courts. *Id.* Thus, Plaintiff contends that the proposed claims relate back to the original Complaint and that the Deputies knew, or should have known, from these allegations that Plaintiff intended to file suit against them. *Id.* Plaintiff also argues that the Deputies' actions are part of a pattern and practice of discriminatory actions based on religion. *Id.*

Plaintiff argues that his proposed claims against NJSP mailroom staff also relate back to the original Complaint. *Id.* Plaintiff does not present arguments regarding how his claims against

prison mailroom officers relate back to the original Complaint. Rather, Plaintiff argues that the NJSP mailroom staff are hindering his access to the Court, and the mailroom staff's conduct was harassing and discriminatory. *Id.* Plaintiff contends that the mailroom staff specifically delivered mail to Plaintiff on days of religious observance to interfere with his access to the Court. *Id.* Plaintiff also argues that the conduct of the mailroom staff contributes to an ongoing practice of harassment and discrimination. *Id.* at 4.

Plaintiff contends that his proposed claims against Officers Martini and Monroe also relate back to the original Complaint. *Id.* at 4. Plaintiff argues that the claims against Officers Martini and Monroe relate back to his original Complaint because their actions "occurred in close proximity to [Plaintiff's First Amendment]" and are part of NJSP's alleged ongoing harassment and discrimination toward Plaintiff. *Id.*

Plaintiff argues that the proposed deliberate indifference claims against the John Doe Defendants and the prison infirmary supervisor relate back to the original Complaint. *Id.* at 5. Plaintiff contends that the events giving rise to the deliberate indifference claims occurred at the same time as his "[a]dministrative segregation claims of constitutional violations and wrongs." *Id.*

Plaintiff also argues that he unintentionally omitted former Defendants Johnson and Wilcox from his FAC. *Id.* at 6. Plaintiff argues that "for good cause [and] in the interest to do substantial justice," the Court should permit him to add former Defendants Johnson and Wilcox as Defendants in this action. *Id.*

Lastly, Plaintiff seeks to add claims against J. and Z. Goodwin. *Id.* at 7. Plaintiff argues that they "are of the same or similar mind as the lieutenants and sergeants who moved Plaintiff on the mornings of 5/20/15 and 5/22/15." *Id.* Plaintiff argues that J. and Z. Goodwin have harassed him and retaliated against him because of his claims against state employees. *Id.* Plaintiff claims

the conduct of J. and Z. Goodwin relates to his claims of pervasive harassing and discriminatory behavior by Defendants. *Id.*

Plaintiff argues that he does not seek to delay this action or act with dilatory intent by filing the instant Motion. *Id.* Further, Plaintiff contends that this Motion is filed in good faith and allowing him to file the proposed Fifth Amended Complaint will not unfairly prejudice Defendants. *Id.*

Plaintiff argues in his Reply Brief [ECF No. 144] that Defendants' contentions that Plaintiff seeks, in bad faith and with dilatory motive, to file the proposed Fifth Amended Complaint are unfounded. ECF No. 144 at 1. Plaintiff argues that he discovered "unknown precedent, statu[t]es, and/or constitutional amendments that would/will bolster" his claims and make them more viable. *Id.* at 2. Plaintiff argues that filing several amendments is financially disadvantageous to him. Thus, he would not file amendments in bad faith. *Id.* Plaintiff further contends that any delay results from Defendants' failure to serve several John Doe Defendants in state court and their removal of this action to this Court. *Id.* at 3. Plaintiff argues that any prejudice is a consequence of Defendants' own delay. *Id.*

Plaintiff contends that Defendants' argument that he has failed to show actual injury for several of the claims he seeks to add does not matter because his claims against the Sheriff's Office Deputies did not "accrue/mature" until he discovered that he had a claim against the Deputies for continual harassment and discrimination. *Id*. at 5. Plaintiff concedes that he suffered no injury from the disagreement between he and his doctor or his access-to-courts claim. *Id.* at 6. Plaintiff explains that before discovering "the doctrine of continuing discriminatory harassment," he had no injury. *Id.* at 5-6. However, Plaintiff argues that the alleged pervasive harassment and discrimination that occurred at NJSP is an actual injury suffered by Plaintiff. *Id.* A cause of action does not *create*

injury. A cause of action offers a party redressability for harm that *already occurred*. Plaintiff's concession that he suffered no injury before learning of the apparent ability to pursue claims against the Deputies further demonstrates that he did not suffer actual injury from their alleged conduct. Mere allegation of harassment and discrimination is insufficient to show injury. *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)("To state a claim under the Equal Protection, a plaintiff must show that he received 'different treatment from that received by other individuals similarly situated.' Plaintiff's Complaint merely summarily alleges that Plaintiffs were denied equal protection of the law [by arguing] that they were subject to 'governmental discrimination because of their [religious] beliefs.'").

Plaintiff's request for reservice need not be addressed here as the request was addressed in an Order entered by this Court on August 10, 2020. *See* ECF No. 38.

### b. Defendants' Arguments

#### i. Plaintiff Has Acted With Dilatory Motive in Unduly Delaying This Action, Causing Defendants Unfair Prejudice.

Defendants argue that the Court should deny Plaintiff's Motion because Plaintiff has continually delayed this action and demonstrated bad faith in seeking to file the proposed Fifth Amended Complaint. ECF No. 136 at 19. Defendants argue that they will continue to be prejudiced by Plaintiff's continuous requests to the Court for leave to amend the pleadings. *Id.* at 20. Defendants argue that the "lapse of time, loss of witnesses, and fading of memories occasioned by further delays in the proceedings" are unfairly prejudicial. *Id.*

Defendants explain that five years have elapsed since Plaintiff initiated this action. *Id.* at 21. Defendants explain that in the past five years, Plaintiff has not demonstrated any intent to proceed with the litigation of his claims on the merits. *Id.* at 22. Defendants contend that Plaintiff's repeated removal, substitutions, and additions of Defendants have resulted in significant delay and

demonstrates an intent to stall this action. *Id.* Defendants state that Plaintiff has conducted a "time-consuming game of chess" in which he seeks to add and remove Defendants at will, at times seeking default against Defendants that he seemingly sought to remove from the action. *Id.* Defendants explain that most of the claims Plaintiff seeks to add in the proposed Fifth Amended Complaint relate to events that took place in 2014, 2015, 2016, and 2017. Defendants question why Plaintiff has not explained his delay in bringing these claims before the Court. *Id.* at 25. Defendants argue that this action should not continue to be delayed based on Plaintiff's inability to commit to a set of claims or Defendants. *Id.* at 22.

Defendants contend that Plaintiff claims in bad faith that he did not know who the head of the RIC was and, as such, could not name him as a Defendant previously. Defendants contend that this is untrue. Defendants explain that Plaintiff referred to Mr. Hicks as the head of the RIC in several documents filed in this action. ECF No. 1-1 at 9; ECF No. 45 at 7l; ECF No. 75 at 14; ECF No. 104 at 9. In response to Defendants' argument that Plaintiff knew of Mr. Hicks's identity long before filing this Motion, Plaintiff claims that while he knew of Mr. Hicks, he did know that he was the head of the RIC until recently. *Id.* at 4. Plaintiff argues that any delay in naming Mr. Hick's as the head of the RIC in his proposed Fifth Amended Complaint is cured by the fact that the statute of limitations to serve a John Doe Defendant is tolled until the Defendant has been identified. *Id.* As such, Plaintiff claims that his claims against Mr. Hicks relate back to his original Complaint. *Id.*

Second, Defendants argue that Plaintiff knew of Ms. Vaughan as early as November 26, 2018. ECF No. 74 at 3. However, Defendants argue, Plaintiff has unnecessarily delayed obtaining Ms. Vaughan's address for service of process. ECF No. 136 at 23. Plaintiff requested the last known address of Ms. Vaughan on January 2, 2020. ECF No. 121 at 5. Defendants explain that at

the time Plaintiff requested Ms. Vaughan's last known address, she had been removed as a Defendant in this action for almost a year. *See* ECF Nos. 81 and 82. Defendants note that as of the filing of their Brief in Opposition, Plaintiff had yet to serve Ms. Vaughan. ECF No. 136 at 23.

Defendants also argue that Plaintiff claims in bad faith that he seeks to file the Fifth Amended Complaint to correct his error in omitting Defendants Johnson and Wilcox. *Id.* at 24. Defendants argue that Plaintiff not only deliberately omitted these Defendants from the TAC but also sought an Order, pursuant to Federal Rule of Civil Procedure 35, substituting Defendants Johnson and Wilcox for Defendants Davis and Elchabi. *Id.*

Lastly, Defendants contend that Plaintiff alleges harassment by two new Defendants stemming from events that occurred in 2020. *Id.* at 25. Defendants assert that allowing Plaintiff's harassment claims to proceed in this action would cause further delay and prejudice. *Id.* Defendants seem to propose that these claims are better suited for a separate proceeding since the events at issue in this action occurred between three to six years ago, and the new incident does not relate back to the allegations in Plaintiff's original Complaint. *Id.*

## ii.  The New Claims Plaintiff Seeks to Add Are Futile.

Defendants argue that Plaintiff's new claims fail to state a plausible claim upon which relief can be granted. *Id.* at 28. Plaintiff seeks to add claims against three Mercer County Sheriff's Deputies, claiming they harassed and discriminated against him by refusing to serve several John Doe Defendants on his behalf. *Id.* Defendants question how the Deputies could have served unnamed and unknown Defendants. *Id.* Regardless, Defendants claim that the Deputies' behavior does not amount to harassment. *Id.* Defendants also argue that Plaintiff has failed to demonstrate any discriminatory motive or effect on behalf of the Deputies. *Id.* (citing *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002); *Kasper v. Cty. of Bucks*, 514 F. App'x 210, 314 (3d Cir.

2013)(requiring a plaintiff asserting a traditional equal protection claim to show that he received "different treatment than other similarly situated persons" and that the disparate treatment was based on his membership in a "protected class")(citations omitted))). Regardless, Defendants argue that the applicable statute of limitations bars the claims against the Deputies. *Id.*

Plaintiff also alleges that certain NJSP mailroom staff members engaged in harassing and discriminatory conduct. *Id.* Plaintiff asserts that the NJSP mailroom staff violated Plaintiff's First Amendment rights by burdening his practice of religion and engaging in retaliatory conduct. *Id.* Plaintiff claims that the mailroom staff members required him to choose between adhering to his religious beliefs or accepting his legal mail. *Id.* Defendants explain that Plaintiff alleges that these incidents occurred on October 12, 2016, December 3, 2016, September 30, 2017, October 5, 2017, October 12, 2017, and April 6, 2018. *Id.* Defendants argue that five of these six incidents occurred more than two years ago. *Id.* As such, Defendants argue, Plaintiff's claims arising out of the incidents that occurred, except for the April 6, 2018 incident, are barred by the statute of limitations and do not relate back to the original Complaint. *Id.* at 30.

Even if Plaintiff's claims were not barred or related back to the original Complaint, Defendants contend that the mailroom staff's conduct was "de minimus" in nature and would not deter a person of ordinary firmness from exercising a constitutional right. *Id.* Defendants argue that the attempt to deliver mail to an inmate over the weekend is not conduct that amounts to an adverse action "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id.* Further, Defendants claim that Plaintiff has failed to demonstrate that his lawsuits caused the alleged retaliatory conduct of weekend delivery of his mail. *Id.*

Defendants also argue that Plaintiff has failed to allege facts that demonstrate that he was treated differently than those similarly situated. *Id.* at 31. Defendants contend that Plaintiff simply

alleges that the individuals delivering his mail should have known that the complained of occasions were dates of religious observance. *Id.* Defendants contend that that assertion alone does not show disparate treatment based on his religion, nor does it show discriminatory intent. *Id.*

Defendants contend that the NJSP mailroom staff did not place a substantial burden on Plaintiff's religious practice. *Id.* at 32. Defendants state that Plaintiff is required to show that any burden placed on religious practices must be a "substantial pressure on [Plaintiff] to modify his behavior to violate his beliefs." *Id.* (citing *Graham v. Commissioner*, 822 F.2d 844, 851 (9th Cir. 1987)).

Plaintiff asserts another equal protection claim against Officers Martini, Monroe, and Blue for intentionally providing Plaintiff with different food packages than other inmates. ECF No. 126-3 at 31. Defendants first state that Plaintiff's allegations related to events occurring in 2013 and 2017 are barred by the statute of limitations and do not relate back to the original Complaint. ECF No. 136 at 33. Regarding Plaintiff's viable allegations, Defendants argue that Plaintiff failed to show facts indicating discriminatory motive or effect. Defendants explain that there is likely a "'legitimate penological interest' in providing inmates in maximum security facility with clear, transparent food containers, as opposed to opaque, cardboard boxes in which they can conceal contraband." *Id.* at 34. Even if there is no "legitimate penological interest" Defendants argue that the alleged conduct is "petty at worst, and de minimis at best." *Id.* (citing *Wise v. Commonwealth DOT*, No. 07-cv-1701, 2010 U.S. Dist. LEXIS 137179 at *30-31 (W.D. Pa. Sep. 23, 2010)("Acts which are de minimis do not rise to the level of a constitutional violation.").

Plaintiff responds to Defendants' argument that Officers Martini and Monroe had a legitimate penological reason to provide Plaintiff with a clear bag for his cereal instead of a cardboard box like other inmates by alleging that former Defendant Johnson assured Plaintiff that

this issue would be remedied in the future. ECF No. 144 at 7. Further, Plaintiff argues that Defendants' argument that the statute of limitations bars most of Plaintiff's new claims fails because Defendants have not shown that tolling or estoppel do not apply. *Id*. Plaintiff claims that the claims he seeks to add in the proposed Fifth Amended Complaint all relate back to the original Complaint because the claims are consistent with Plaintiff's prior allegations of a pattern and practice of continual harassment and discrimination by the NJSP and those that work at the prison. *Id.*

Next, Defendants argue Plaintiff makes conclusory allegations failing to support his Eighth Amendment claim. *Id.* at 35. Defendants argue that Plaintiff does not "'allege a deliberate indifference' to a 'serious medical need' for which a 'denial of treatment would result in the unnecessary and wanton infliction of pain' or a 'life-long handicap or permanent loss,' as required to support an Eighth Amendment claim in the medical context." *Id.* Plaintiff alleges that in September 2015, he was prescribed Nutren to remedy his weight loss. ECF No. 126-3 at 33-34. Plaintiff further claims that in November 2015, he was no longer given Nutren because he no longer qualified for a prescription. *Id.* Plaintiff claims that the discontinuation of Nutren was a conspiracy against him by the NJSP to harass Plaintiff. *Id.* Defendants argue that these allegations do not show deliberate indifference to a medical need, denial of necessary treatment, or a life-long condition that requires a Nutren prescription. ECF No. 136 at 35. Plaintiff also fails to allege facts supporting any of the necessary elements to prove a conspiracy claim. *Id.* Defendants also claim that these claims are barred by the statute of limitations and do not relate back to the allegations in the original Complaint. *Id.* at 36.

Finally, Defendant argues that Plaintiff's equal protection and access to the courts claims against J. and Z. Goodwin are futile. *Id.* at 37. First, Defendants argue that Plaintiff's claims do

14

not show any discriminatory motive or effect. *Id.* Plaintiff does not present facts suggesting J. and Z. Goodwin treated him differently than other inmates. *Id.* Second, Defendants argue that Plaintiff fails to show an actual injury "through the loss of a non-frivolous, arguable claim," which is required to prove an access to courts claim. *Id.*

Further, Defendants submit that Plaintiff's claims for retaliation are barred by *Heck v. Humphrey*. *Id.* at 38. Plaintiff claims that he was disciplined for filing this action in an act of retaliation. *Id.* However, Defendants argue, Plaintiff has not alleged that the disciplinary actions were challenged and dismissed or overturned on appeal, which is a requirement under *Heck v. Humphrey*. *Id.*

In conclusion, Defendants argue that Plaintiff should not be allowed to amend or supplement his pleadings with new parties and claims five years after he commenced this action. *Id.* Defendants claim that Plaintiff's proposed amendment will unduly delay the resolution of this action, is filed with dilatory motive, and will unfairly prejudice Defendants. *Id.* Defendants also claim that most of the claims Plaintiff seeks to add are futile because they are time-barred and do not relate back to the original Complaint. Even if the claims did relate back to the original Complaint, Defendants contend the proposed amendment fails to state sufficient claims. Defendants suggest that Plaintiff's newly added claims are better suited for a separate action. *Id.* at 39.

## IV.   ANALYSIS

Plaintiff seeks to add claims against existing Defendants and add new claims against new Defendants. Plaintiff's proposed Fifth Amended Complaint names the same Defendants as the Fourth Amended Complaint but adds the following Defendants: (1) R. Sanorski #17; (2) S. Napierkowski; (3) Inv. Napierkowski; (4) John Doe with initials Ø.C. from the Office of the

Mercer County Sheriff; (5) SCO Martini; (6) SCO Monroe; (7) SCO Blue; (8) John Does, who delivered Plaintiff's legal mail on religious days of rest; (9) John Does who authorized and/or distributed Plaintiff's administrative segregation package from October 11, 2013 through July 11, 2014; (9) John Doe, the supervisor or manager at the prison infirmary; (10) Steven Johnson; (11) Rev. W. Wilcox; (12) J. ;(13) Z. Goodwin; and (14) Commissioner Marcus Hicks.

Rule 15 provides a party with the mechanism to amend or supplement its pleadings. Here, Plaintiff seeks leave to file the proposed Fifth Amended Complaint because Plaintiff cannot timely file an Amended Complaint as of right pursuant to Rule 15(a). Rule 15(c) is employed when a party seeks to add a new claim against an existing party or a new claim against a new party, but the statute of limitations has run on the claim. If the statute of limitations has not expired, the Court considers the amendment under Rule 15(a) or (b). When a party seeks to add a claim after the applicable period of limitations has run, the claim will be futile unless the Court determines that the claims relate back to the original Complaint. *Costa v. J. Fletcher Creamer & Sons, Inc.*, No. 16-CV-8492-CCC-SCM 2018 WL 3756445 at *2 (D.N.J. August 8, 2018).

Rule 15(c) will defer to state law providing the applicable statute of limitations if the law is more generous than Rule 15. Here, N.J.S.A. 2A:14A-2 provides the statute of limitations for Plaintiff's claims. Pursuant to New Jersey Court Rule 4:9-3:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

The New Jersey Court Rules provide a relation back rule that is substantially similar to Rule 15, not more generous than Rule 15, so the Court will apply Rule 15(c).

Rule 15(c) is not simply an "identity of transaction test." *Costa*, 2018 WL 3756445 at *2 (quoting *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012)). The key inquiry under Rule 15(c) is "whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Id.*

An amendment seeking to add a party as opposed to expanding upon allegations in the pleading requires a more stringent relation back analysis. *Id.* (citing *Zavian v. Pride Fin., LLC*, 2016 WL 3574008, at *4 (D.N.J. June 30, 2016)). An amendment seeking to add a party requires a showing beyond the fact that the claim arose out of the same conduct, transaction, or occurrence as the allegations originally pled. *Feuerstack v, Weiner*, No. 12-cv-4253 2013 WL 3949234 at *2 (D.N.J. Jul. 30, 2013). New claims against new parties will only relate back if the claims or defenses "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out— in the original pleadings *and* if within the service period, the defendant(s) "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1).

Lastly, a party may use Rule 15(d) when it seeks to add claims or defenses based on facts that happened after the original pleading was filed. Pursuant to Rule 15(d), the Court has discretion to allow a party to serve a supplemental pleading, including allegations that occurred "after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Court may allow a supplemental pleading even if the prior pleading is deficient. *Id.*

17

Even though Rule 15(d) does not include the "same express mandate" as Rule 15(a) to freely grant amendment, this subsection "serves judicial economy, avoids multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleading are filed.'" *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360 (D.N.J. 2000)(quoting *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. 1991)). Rule 15(d), like Rule 15(a), is not without its limits. The Court should freely grant leave to file a supplemental complaint absent undue delay, bad faith, dilatory motive, undue prejudice to defendants, futility, or the supplemental facts are not connected to the original pleading. *Id.* at 361 (citing *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)).

In *Garrett*, the Third Circuit explained that when an amended complaint presents "additional claims arising out of the events described in the original complaint, but which were not set forth in prior pleadings" and also presents new facts and claims that occurred after the original complaint was filed, the amended complaint functions as both an amended complaint and a supplemental complaint. Here, because Plaintiff seeks to add claims that arose out of the allegations described in the original Complaint, and claims that occurred after the original Complaint was filed, the proposed Fifth Amended Complaint functions as both an amended complaint and a supplemental complaint.

Defendants assert that nearly all of Plaintiff's newly added claims are time-barred. ECF No. 136 at 18. Plaintiff counters that the newly added claims relate back to the original Complaint and thus are not time-barred. ECF No. 126-2 at 3-5. Essentially, Plaintiff seeks recourse for an alleged pattern of harassment and discrimination perpetuated by NJSP employees. *Id.* at 3; *See* ECF No. 126-3. Thus, Plaintiff argues that all newly added claims relate back to the original

Complaint. ECF No. 126-2 at 3-5. Although the conduct giving rise to new claims represents separate events, Plaintiff argues that the events are part of one set of operative facts in the aggregate. *Id.*; *See* ECF No. 126-3.

### a. The Proposed Amendment Would Cause Further Delay and Prejudice to Defendants.

Delay may be considered undue when a movant has had several opportunities to amend the complaint. *Rolo v. City Investing Co. Liquidating Trust*, 115 F.3d 644, 654-55 (3d Cir. 1998). In *Rolo*, the Third Circuit found that Plaintiffs' proposed SAC amounted to Plaintiffs re-pleading allegations that Plaintiffs could have, and should have, asserted earlier in the action. Further, the Third Circuit found in *Lorenz* that a three-year period between filing the original complaint and Plaintiff's proposed Amended Complaint was unreasonable because Plaintiff had several opportunities to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). In contrast, the *Marinac* Court found it appropriate to allow an amendment four years after the original Complaint was filed because "any delay has little to no effect on the timing of resolution of this matter." *Marinac v. Mondelez International, Inc.*, 2019 WL 351900, at *3 (D.N.J. Jan. 29, 2019). The questions of undue delay and bad faith turn on "plaintiff's motives for not amending their complaint to assert their claim earlier." *Cochlear Ltd. v. Oticon Medical AB*, 2019 WL 3429610, at *10 (D.N.J. Jul. 7, 2019).

Here, Plaintiff's proposed Fifth Amended Complaint largely amounts to re-pleading allegations that could have been asserted in Plaintiff's four prior Amended Complaints. The Court cannot continue to allow Plaintiff to add and remove parties in this action indefinitely. Plaintiff has continuously sought to correct errors of omission of certain Defendants. The Court does not question the veracity of Plaintiff's contention that such errors are unintentional; however, the Court questions the repeated addition and deletion of certain Defendants, namely Johnson and Wilcox.

The removal of Johnson and Wilcox cannot be an unintentional error because Plaintiff explicitly sought to substitute Johnson and Wilcox out of this action. *See* ECF No. 75. Plaintiff named Defendants Johnson and Wilcox as Defendants in the SAC. *See* ECF No. 1-1. Plaintiff then removed Johnson and Wilcox as named Defendants in the TAC. *See* ECF No. 45. It is unclear if such omission was intentional, as Defendants argue, or accidental. Plaintiff's subsequent Request for Default against Johnson and Wilcox indicates that such omission was unintentional. Regardless, Plaintiff filed a Motion to Substitute specifically seeking to remove Johnson and Wilcox from this action. *See* ECF No. 75. Plaintiff cannot now claim inadvertence or accident in omitting these Defendants from his FAC when he intentionally substituted them out of this case. Thus, the Court finds that Plaintiff cannot now amend his FAC to add Johnson and Wilcox as Defendants.

Plaintiff also attempts to rename Ms. Vaughan as a Defendant because he does not know the identity of the person who replaced Ms. Vaughan. However, pursuant to Federal Rule of Civil Procedure 25, "Jane Doe" was substituted for Ms. Vaughan because Ms. Vaughan no longer holds her position at the NJSP. ECF No. 82 at 2. The Court will not permit Plaintiff to rename a Defendant he intentionally sought to remove from this action. *See* ECF No. 74. Plaintiff cannot seek to add Ms. Vaughan as a Defendant simply because he does not know the identity of the person who replaced Ms. Vaughan at the NJSP.

While Defendants complain of undue delay, which has certainly occurred, they have not opposed most of Plaintiff's Motions, including several Motions to Amend, Motions to Substitute, and Motions for Extension of Time to Serve. Regardless, the delay in this case is predominantly caused and perpetuated by Plaintiff.

While there is a liberal policy favoring amendment, that is weighed against any delay, bad faith, dilatory actions, and unfair prejudice to Defendants. The Court has certainly been liberal in the number of Amended Complaints Plaintiff has been permitted to file. This case has been pending for five years[2] and Plaintiff's repeated amendments and substitutions of parties, at this point, have caused significant delay in the resolution of this dispute. The Court has yet to enter a Scheduling Order, and the parties have not engaged in discovery.

The significant delay is also unfairly prejudicial to Defendants. Plaintiff has attempted to add and remove Defendants at will, giving little assurance as to which Defendants Plaintiff will ultimately proceed against. Further, as time elapses, witnesses' memories fade, and potential Defendants are more difficult to locate and/or defend because they may have left their position at NJSP.

**b.  The Claims Plaintiff Seeks to Add are Futile.**

**i.  Plaintiff's New Claims Against Existing Parties**

**1.  Equal Treatment Claims Against Defendants Elchabi and Davis**

In the proposed Fifth Amended Complaint, Plaintiff adds equal protection claims against Defendants Elchabi and Davis. While expanding allegations against existing Defendants is viewed by the Court more liberally, the Court finds that Plaintiff's undue delay in adding Defendants Elchabi and Davis outweighs the liberal policy of freely permitting amendment. Plaintiff does not explain why he waited until the proposed Fifth Amended Complaint to add these Defendants to the existing "Equal Treatment Violations" section of his Complaint. Absent undue delay, Plaintiff's claims against Defendants Elchabi and Davis are futile.

---

[2] This case has been pending for three years in this Court but was initiated five years ago in state court.

To state an equal protection claim, Plaintiff must show the conduct of Defendants "(1) had a discriminatory effect and (2) [was] motivated by a discriminatory purpose." *Bradley v. U.S.*, 299 F.3d at 205. "To prove discriminatory effect, [Plaintiff must] show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Id.* at 206. Plaintiff's allegations do not suggest a discriminatory effect.

Plaintiff claims Defendants Elchabi and Davis denied him equivalent means to celebrate and observe religious holidays. ECF No. 126-3 at 7. Plaintiff states that he has the right to observe a seventh-day Sabbath and includes details about what the Sabbath observance entails. *Id.* at 8. However, Plaintiff does not assert a single fact demonstrating conduct on behalf of Defendants Elchabi and Davis that interfered with his right to observe the Sabbath. *See Id.* at 7-8. Further, Plaintiff does not allege that he was treated differently from similarly situated individuals. *Id.* Thus, Plaintiff's equal protection claims against Defendants Elchabi and Davis are futile.

Similar to Judge Martinotti's reasoning in the Court's Opinion [ECF No. 81], in light of the above analysis, the Court need not evaluate whether Plaintiff's claims are barred under *Heck v. Humphrey* or a qualified immunity affirmative defense. *See* ECF No. 81 at 10, n. 7. If such analysis is warranted for the Defendants in this action, the Court finds that such arguments are better suited for consideration in the motion to dismiss context. *See Chubb INA Holdings, Inc. v. Chang*, No. 16-cv-2354 2016 WL 6841075, at *6 (D.N.J. Nov. 21, 2016).

## 2.    Section 1985 Claims Against Defendants Elchabi and Davis

Plaintiff also adds claims against Defendants Elchabi and Davis under 42 U.S.C.§ 1985. Section 1985 provides a remedy against private conspiracies and conspiracies by state actors. To prevail on a § 1985 claim, Plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of

equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610, ALF-CIO v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356 (1983).

On the face of the Fifth Proposed Amended Complaint, Plaintiff cannot demonstrate that these elements are met. Plaintiff claims:

> Commissioner Hicks, Charles E. Warren Jr., Imam Rasul Suluki denied my request for a Sabbath day [d]iet without any legitimate penological interest while granting other faiths and religions similar request to mine. Such denial was/is religiously discriminatory against me. A direct attack on my religious beliefs. Because Steven Johnson, Rev. W. Wilcox, Bruce Davis and Imam J. Elchabi have, or currently occupy the respective offices of Charles E. Warren Jr., and Imam Rasul Suluki; they are to be held personally liable for the continuing and ongoing constitutional violation(s) claimed against Warren[,] Suluki[,] and/or Hicks. They have notice of my claim(s) and the power/authority to grant relief but are allowing them to continue after having inherited their predecessors['] responsibilities.

ECF No. 126-3 at 22. Plaintiff seems to allege that the named parties attempted to or did deprive him of equal protection under the law by discriminating against his religious beliefs. Showing religious discrimination alone is not enough to assert a meritorious § 1985 claim. These allegations clearly do not show a conspiracy or an act in furtherance of that conspiracy. Plaintiff fails to demonstrate that Defendants Elchabi and Davis agreed with other NJSP employees to discriminate against Plaintiff because of his religious beliefs. Further, Plaintiff fails to submit the injury that resulted from the alleged discrimination. As such, Plaintiff's § 1985 claims are futile.

### 3.    Jane Doe, Ms. Vaughan's Replacement

Jane Doe was first named as a Defendant in Plaintiff's FAC. *See* ECF No. 104. However, Plaintiff did not assert any allegations against Jane Doe in the FAC. *Id.* Plaintiff's proposed Fifth Amended Complaint repeats allegations against Ms. Vaughan and alleges that Jane Doe "personally continues Ms. Vaughan's violations." ECF No. 126-3 at 11.

The events complained of started as early as 2018 when it appears Jane Doe replaced Ms. Vaughan. *See* ECF No. 74. The allegations against Jane Doe appear to be present and ongoing and, as such, are not time-barred. These events clearly occurred after the original Complaint was filed in 2015, so the Court will use Rule 15(d) to determine if Plaintiff should be permitted to file these claims as a supplemental pleading. At this point, adding claims that accrued over three years after the original pleading was filed will unnecessarily delay this action. Plaintiff cannot continue to delay this action by adding new claims year after year against different prison employees. This action will not proceed out of the earliest litigation stages if the Court continues to permit Plaintiff's repeated amendments. The purpose of Rule 15(d) is to allow for the *swift* adjudication of disputes. If the Court continually allows Plaintiff's practice of adding new claims and/or parties indefinitely, that will certainly run contrary to Rule 15(d)'s purpose. Nonetheless, even if the Court found no delay, Plaintiff's claims against Jane Doe are futile.

Plaintiff alleges that "Jane Doe" has burdened Plaintiff's practice of religion, has been deliberately indifferent to a serious nutritional need, and denied Plaintiff equal treatment under the law. ECF No. 126-3 at 14. In relation to each of these claims, Plaintiff alleges that Ms. Vaughan and/or her replacement, Jane Doe approved Plaintiff's request to receive a Kosher diet. *Id.* However, Plaintiff alleges that other inmates not on a Kosher diet received "larger portions with greater nutritional value and a posted daily menu." *Id.* Plaintiff claimed that the Kosher diet did not meet his nutritional needs. *See Id.* at 11-14. Plaintiff claims these differences are due to "deliberate animus toward me and my religious beliefs in order to deliberately burden the practice and observance of the same." *Id.* at 12. Facially, Plaintiff's allegations do not show that Jane Doe intentionally acted to put  "substantial pressure on [Plaintiff] to modify his behavior to violate his beliefs" as is required to prove a violation of the First Amendment free exercise clause. *Thomas v.*

*Review Bd.*, 450 U.S. 707, 717-18 (1981). Thus, Plaintiff's burden on practice of religion claim is futile.

Further, taking Plaintiff's claims as true, Plaintiff does not show that Jane Doe acted with deliberate indifference to Plaintiff's health. "To establish a violation of his Eighth Amendment right to adequate medical care, a plaintiff must show (1) a serious medical need, and (2) acts or omissions by prison officials that indicated deliberate indifference to that need. *Sharpe v. Medina*, No. 10-cv-4276, 2011 WL 3444320 at *4 (D.N.J. Aug. 11, 2001)(citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "A serious medical need is a need diagnosed by a physician that the physician believes to require medical treatment, or a need that is 'so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Sharpe*, 2011 WL 3444320 at *4 (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro,*834 F.2d 326, 347 (3d Cir.1987) (citation omitted))). Where denial or delay in treating a medical need would cause an inmate to suffer life-long handicap or permanent loss, the medical need is serious. *Id.* Plaintiff does not allege a medical diagnosis provided by a physician related to the Kosher diet approved by Jane Doe. Plaintiff also fails to show that the Kosher diet approved by Jane Doe would cause a life-long handicap or permanent loss. Thus, Plaintiff's deliberate indifference claim against Jane Doe is futile.

With regard to the equal treatment allegations, Plaintiff does allege different treatment to those similarly situated. ECF No. 126-3 at 14. Plaintiff alleges that other inmates not on a Kosher diet received larger portions of food containing greater nutritional value. Plaintiff claims he is being punished "through religious animus and discrimination." However, Plaintiff does not present factual allegations showing that difference in portion, nutritional value, or quality in food was motivated by "deliberate animus" toward his religious beliefs. Thus, Plaintiff's equal protection claim against Jane Doe is futile.

### ii.  Plaintiff's New Claims Against New Parties

#### 1.    Commissioner Hicks

Plaintiff claims that while he knew of "Director" Hicks, he did not know that he was the head of the RIC until recently. ECF No. 141 at 6. Plaintiff argues that he did not seek to cause delay and is not now naming Mr. Hicks as the head of the RIC in bad faith. However, in each iteration Plaintiff's pleadings, he refers to "Director Hicks" under the heading "DEFENDANT: Head of the RIC," so Plaintiff's claim that he did not know that Hicks was the head of the RIC until recently appears to be untrue.

The events giving rise to Plaintiff's claims against Mr. Hicks occurred before the original Complaint was filed, and thus the Court must determine whether the claims against Mr. Hicks relate back under Rule 15(c). Plaintiff alleges in the proposed Fifth Amended Complaint, as he did in prior Amended Complaints, that he submitted a request for a weekly Sabbath day diet under "ACA 10A:17-5.9(d)" to Defendant Suluki on December 12, 2011. ECF No. 126-3 at 8. Defendant Suluki denied Plaintiff's request and informed Plaintiff that he had referred Plaintiff's request to the RIC for consideration on January 10, 2012. *Id.* Plaintiff alleges that he did not receive a response from the RIC, so he sent a copy of his request to Director Hicks on July 30, 2012. *Id.* at 9. Plaintiff alleges that he was informed by the Office of the Ombudsman that his request was forwarded to Administrator Charles E. Warren. *Id.*

It is clear that Plaintiff knew, or should have known that Hicks was the head of the RIC when he was instructed by Defendant Suluki that his request was referred to the RIC and Plaintiff subsequently contacted "Director Hicks" when the RIC had yet to respond to his request. Plaintiff referred to Hicks under the section "DEFENDANT: Head of the RIC" in each Amended Complaint yet waited until the proposed Fifth Amended Complaint to name him as a Defendant. *See* ECF

26

Nos. 1-1 at 9, 45 at 7, 75 at 14, and 104 at 9. Even though Plaintiff clearly intended Mr. Hicks to

be a Defendant in this action, Mr. Hicks did not receive notice, pursuant to Rule 15(c), such that

the Court could allow Plaintiff's claim to relate back to the original pleading. To take advantage

of Rule 15(c), Plaintiff had to provide notice to Mr. Hicks within the time period provided by Rule

4(m), 90 days. Additionally, Mr. Hicks had to know or should have known that an action was

meant to be brought against him. Plaintiff did not put Mr. Hicks on notice such that Mr. Hicks

should have anticipated suit against him within 90 days after the Complaint was filed.

Plaintiff has had more than enough opportunities to name Mr. Hicks as a Defendant yet

waited nearly eight years after the alleged incident giving rise to Plaintiff's claim to take action

against Mr. Hicks. Further, because the events giving rise to Plaintiff's allegations against Mr.

Hicks occurred in 2011 and 2012, these claims likely would have been barred by the two-year

statute of limitations even if Plaintiff named Mr. Hicks in the original Complaint filed in 2015.

Plaintiff does not assert facts suggesting that a tolling doctrine is applicable. As such, the claims

are futile. Thus, the Court will not permit Plaintiff to add Mr. Hicks as a Defendant in this action.

### 2. Mercer County Sheriff's Office Deputies and John Doe with the Initials "Ø.C."

The Court will not permit Plaintiff to file new claims against the Deputies, S. Sanorski, S.

Napierkowski, Niv. Napierkowski, and John Doe with the initials "Ø.C." as a supplemental

pleading. Plaintiff alleges that the Deputies refused to serve the John Doe Defendants on June 30,

2016, August 15, 2016, and January 17, 2017. ECF No. 126-3 at 27. Further, Plaintiff received

correspondence on July 5, 2016, August 29, 2016, and September 14, 2016, signed by Officer ØC

stating the John Does cannot be served because Plaintiff did not provide both the names and

addresses for the John Does; Plaintiff only provided addresses. *Id.* Fictitious John Doe Defendants

cannot be served without a name, or sufficiently identifying information, and address so, on the

face of Plaintiff's pleading, the Court finds that Plaintiff has not pled a cause of action for which relief can be granted.

Even if Plaintiff did plead sufficient claims, such claims are barred by the two-year statute of limitations period. A statute of limitations defense is generally unavailable in a motion to dismiss filed under Rule 12(b)(6). However, there is an exception, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishebein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *See also Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Here, the Court finds that, on the face of Plaintiff's proposed Fifth Amended Complaint, a determination can be made on the statute of limitations issue.

"It is well-settled that actions seeking a remedy under 42 U.S.C. § 1983 are governed by the statute of limitation applicable to state personal injury claims, depending on where the cause of action accrued." *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007)(citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). A two-year statute of limitations period applies to personal injury claims in New Jersey. N.J.S.A. 2A:14-2. Thus, claims brought pursuant to § 1983 that accrued in New Jersey are subject to a two-year statute of limitations period. While the statute of limitations period is determined by state law, federal law governs when the cause of action accrued. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). A cause of action accrues once the plaintiff has a "complete and present cause of action" meaning "the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). Importantly, the date of accrual stems from the date when a plaintiff knew or should have known that the injury occurred, not when a plaintiff

realizes he or she realizes the injury gives rise to a legally cognizable claim. *Pederson v. Nat'l Collegiate Athletics Ass'n*, No. 14-2544, 2015 WL 7573200, at *3 n.5 (D.N.J. Nov. 24, 2015).

Plaintiff argues that Defendants fail to prove the statute of limitations affirmative defense because they do not show that any tolling doctrine is inapplicable. However, plaintiffs generally bear the burden of demonstrating that a tolling doctrine applies. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014)(citing *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997); *see also Pizio HTMT Glob. Sols.*, 555 Fed. Appx. 169, 176-77 (3d Cir. 2014); *see also Hammer v. Cardio Med. Prod., Inc.*, 131 Fed. Appx. 829, 831 (3d Cir. 2005). The Supreme Court and Third Circuit have both noted that the doctrine of equitable tolling should be applied sparingly. *Winder v. Postmaster Gen. of U.S.*, 528 Fed. Appx. 253, 256 (3d Cir. 2013)(citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Here, the events giving rise to Plaintiff's claims against the Deputies and Officer ØC, accrued over two years ago. Plaintiff has failed to assert any facts showing that a tolling doctrine could apply to his claims. Thus, the claims against the Mercer County Sheriff's Office Deputies and John Doe with the initials Ø.C. are futile.

### 3.    John Does, Who Delivered Legal Mail to Plaintiff on Religious Days of Observance

The Court also finds that Plaintiff's claims against the NJSP mailroom staff are futile. Plaintiff alleges a "pervasive and continuing, general, pattern of harassment by State employees intended to discourage and[/]or [impede] or prevent justice being done." *Id.* at 29. Plaintiff claims that mailroom personnel delivered him legal mail on the following dates: October 12, 2016, December 3, 2016, April 30, 2017, October 5, 2017, October 12, 2017, and April 6, 2018. *Id.* Plaintiff explains that these dates are dates of religious observance. *Id.* Plaintiff alleges that he has written grievances about delivery on these dates and even contacted Defense counsel requesting that the mailroom personnel be restrained from delivering mail to Plaintiff on religious days of

observance. *Id.* The instances complained of occurred after Plaintiff filed the original Complaint, so the Court will use Rule 15(d) to determine whether to allow these claims as a supplemental pleading.

Plaintiff asserts retaliation, burden on practice of religion, and equal protection claims against the mailroom staff Defendants. The Court finds that almost all these claims are barred by the applicable statute of limitations and are thus futile. As previously mentioned, the applicable statute of limitations period is two years. Plaintiff alleges that the events giving rise to his claims occurred on October 12, 2016, December 13, 2016, September 30, 2017, December 5, 2017, October 12, 2017, and April 6, 2018. Plaintiff does not argue that a tolling doctrine applies. Plaintiff's claims against the mailroom staff, except for the claim arising out of the April 6, 2018 event, are barred by the two-year statute of limitations.

The Court finds the Firth and Fourteenth Amendment claims arising out of the April 6, 2018 events are futile. To prove a retaliation claim, Plaintiff must demonstrate that he engaged in a constitutionally protected activity, that the retaliatory action would deter a person of ordinary firmness from exercising his constitutional rights, and there is a causal link between the protected activity and the retaliatory conduct. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)(citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)),

Plaintiff was engaged in a constitutionally protected activity, filing lawsuits against prison employees. Plaintiff alleges he was subjected to the adverse action of purposeful delivery of legal mail on religious holidays. ECF No. 126-3 at 29-30. Plaintiff alleges that the mailroom staff had previous knowledge of Plaintiff's days of religious observance and his past grievances related to mail delivery on dates of religious observance. *Id.* at 29. Plaintiff claims that Defendants knew that

Plaintiff would refuse mail on religious days of observance yet delivered legal mail on six religious days of observance from 2016 to 2018. *Id.*

Taking Plaintiff's allegations as true, the mailroom staff members' conduct may constitute an adverse action since they knew about Plaintiff's prior grievances concerning mail received on days of religious observance. However, Plaintiff fails to demonstrate that the mailroom staff members' knowledge of Plaintiff's lawsuits specifically motivated the mailroom staff to deliver mail to Plaintiff, on six occasions over the past several years, on religious days of observance. Plaintiff does not allege any facts demonstrating that the mailroom staff knew of Plaintiff's pending lawsuits, and for that reason, intentionally delivered mail to him on days of religious observance. Thus, on its face, Plaintiff's proposed Fifth Amended Complaint does not state a viable retaliation claim.

Plaintiff's unequal treatment claim against the mailroom staff is also futile. Plaintiff alleges that he was treated differently based on his religious beliefs. Like the analysis regarding the claims against Defendants Elchabi and Davis discussed *supra*, Plaintiff has not sufficiently alleged that the mailroom staff treated similarly situated inmates, who do not share Plaintiff's beliefs, differently. Rather, Plaintiff summarily alleges he was treated differently from similarly situated inmates. *Id.* at 30. Thus, Plaintiff's equal protection claims are futile.

### 4. Officers Martini, Monroe and Blue

Next, the Court finds that the claims against Officers Martini, Monroe, and Blue are futile. Plaintiff explains in the instant Motion that the claims against Officers Martini and Monroe occurred shortly *after* Plaintiff's first request to amend his Complaint, so the Court will consider the addition of these claims under Rule 15(d). *Id.* at 4. Plaintiff contends that the allegations against these officers are closely related to the allegations raised in the Complaint. *Id.*

31

Plaintiff filed the First Amended Complaint on August 7, 2015 in state court. ECF No. 136 at 8. Plaintiff does not explain his five-year delay in bringing some of his claims against Officers Martini, Monroe, and Blue. Plaintiff's claims against the Officers arose from events on February 26, 2013, March 7, 2013, August 23, 2017, August 28, 2017, and February 6, 2019. ECF No. 126-3 at 31. Plaintiff does not present arguments regarding the applicability of any tolling doctrine. The claims arising out of events that occurred in 2013 would have been time-barred when the original Complaint was filed on August 7, 2015, and thus do not relate back to the original Complaint. Second, the events occurring in 2017 are barred by the applicable two-year statute of limitations and thus futile.

While Plaintiff's claim against Officers Martini and Monroe arising from an event that occurred on February 6, 2019 is not time-barred, it occurred four years after the original pleading, and adding the claim at this point will unnecessarily delay this action. As discussed *supra*, Plaintiff cannot continue to delay this action by adding new claims year after year against different prison employees. The purpose of Rule 15(d) is to allow for the *swift* adjudication of disputes. If the Court continually allows Plaintiff's practice of adding new claims and/or parties indefinitely, that will certainly run contrary to Rule 15(d)'s purpose. Even if there was no delay, Plaintiff's claims related to the events occurring in 2019 are likely futile.

Plaintiff claims he was denied equal treatment under the law in furtherance of a pattern of harassment and discrimination by NJSP employees. *Id.* at 31. Plaintiff alleges he received a "tattered ragged brown paper sack with the cereal (within plastic bags) inside such removed from their cardboard boxes." *Id.* at 31-32. Plaintiff claims that other inmates received cereal in the original cardboard boxes. *Id.* Taking Plaintiff's claims as true, receipt of a tattered food package on one occasion in no way demonstrates discriminatory motive or effect constituting a violation

of his equal protection rights. *See Bradley*, 299 F.3d at 205. These actions are *de minimus* at best. *See McKee v. Hart*, 436, F.3d 165, 170 (3d Cir. 2006). Thus, Plaintiff's equal protection claims against Officers Martini and Monroe are futile.

### 5.    John Doe(s) Who Distributed Plaintiff's Indigent Package

Plaintiff alleged that certain John Doe Defendants denied him "the basic necessities of oral hygiene" from October 11, 2013 to August 11, 2014. These claims occurred six to seven years ago and are clearly barred under the applicable two-year statute of limitations. Plaintiff does not argue that any tolling doctrine applies. Plaintiff appears to raise factual allegations related to his indigent package for the first time in the proposed Fifth Amended Complaint. Thus, these claims do not relate back to the original Complaint because they do not arise out of the same conduct, occurrence, or transition of the original Complaint. The Court finds that the claims against John Doe Defendants who distributed Plaintiff's indigent package are futile.

### 6.    John Doe, the Supervisor or Manager of the NJSP Infirmary

Plaintiff alleges he was prescribed Nutren, a protein and vitamin source, in September 2015 to remedy his weight loss. *Id.* at 33. In November 2015, Plaintiff alleges that he was informed that he no longer met the criteria for Nutren use, and his prescription was not refilled. *Id.* at 34. Plaintiff claims that the discontinuation of Nutren was part of a conspiracy by the NJSP to harass him and that denial of the prescribed treatment showed deliberate indifference to Plaintiff's health concern. *Id.*

The Court finds that Plaintiff's Eighth Amendment claims are futile. Plaintiff does not allege facts demonstrating the infirmary supervisor's deliberate indifference to a serious medical need. It appears that Plaintiff was prescribed a protein supplement to gain weight, and once the supplement was successful, he was no longer prescribed the supplement. The Court assumes that

Plaintiff no longer met the criteria to receive Nutren because he gained weight. Even if Plaintiff still required Nutren yet was denied it, such denial would likely not result in unnecessary infliction of pain or a life-long handicap or permanent loss. *Atkinson v.* Taylor, 316 F.3d 257, 273 (3d Cir. 2003); *Estelle*, 429 U.S. at 106. Further, Plaintiff's claims are time-barred. Here, the incident complained of occurred in November 2015, nearly five years ago, and does not relate back to the original Complaint because it does not stem from the same conduct, occurrence, or transaction complained of in the original Complaint.

Plaintiff also fails to demonstrate a sufficient claim for conspiracy. Plaintiff asserts that "the custody staff found that my intake of the Nutren posed a direct intrusion upon their ongoing SOP(s) of harassment…and therefore gained the cooperation of the infirmary [supervisor] to discontinue my Nutren that was prescribed." ECF No. 126-3 at 34. To prove a conspiracy claim to violate federal civil rights Plaintiff must show: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs…any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'" *Barnes Foundation v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)(quoting 42 U.S.C. § 1983). Plaintiff's bare allegation does not demonstrate an agreement by the infirmary supervisor and other NJSP employees to violate Plaintiff's federal civil rights. Thus, Plaintiff's conspiracy claim against the supervisor of the infirmary is futile.

### 7.    J. and Z. Goodwin

Lastly, Plaintiff alleges that Officers J. and Z. Goodwin have been harassing him to coax him into committing a disciplinary infraction, requiring placement in Administrative Segregation

34

where his access to the law library is significantly limited. ECF No. 126-3 at 35-36. Plaintiff claims that J. and Z. Goodwin's alleged harassing conduct is ongoing and with the intent to prevent Plaintiff's access to the courts and to discriminate against him. *Id.* Plaintiff alleges the events giving rise to his claims occurred on January 7, 2020, January 16, 2020, and January 18, 2020. *Id.* While Plaintiff's claims are not time-barred, the relevant incidents occurred five years after the original pleading, and adding such a claim at this point will unnecessarily delay this action.

As previously stated, Plaintiff cannot continue to delay this action by adding new claims year after year against different prison employees. The purpose of Rule 15(d) is to allow for the *swift* adjudication of disputes. If the Court allows Plaintiff's practice of continually adding new claims and/or parties, that will certainly run contrary to Rule 15(d)'s purpose. Regardless of delay or prejudice, Plaintiff's claims are futile.

To establish that Plaintiff was denied meaningful access to the courts, he must show: "(1) actual injury, such as the loss or rejection of a legal claim; and (2) that the lost or rejected legal claim is not frivolous. *Sanders v. Phila. Dist. Attorney's Office*, 546 Fed. Appx. 68, 72 (3d Cir. 2013). Plaintiff recounts what appears to be a series of general grievances rather than specific factual allegations supporting an access to courts claim. ECF No. 126-3 at 35-37. Plaintiff also alleges that his access to the law library was restricted. *Id.* at 35. Restricted access to the law library alone cannot sufficiently support an access to courts claim. *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). Plaintiff also does not present any facts demonstrating that an actual injury, through the loss of a non-frivolous, arguable claim related to the alleged conduct of J. and Z. Goodwin. *Christopher v. Harbury*, 536 U.S. 403, 415-16, 122 S.Ct. 2179, 2187 (2002). Thus Plaintiff's claims against J. and Z. Goodwin are futile.

Plaintiff also fails to sufficiently allege an equal protection claim. As stated above, Plaintiff's allegations against J. and Z. Goodwin are a recounting of general grievances that do not specifically show that he was treated differently than those similarly situated to support an equal protection claim. Thus, Plaintiff's equal protection claims against J. and Z. Goodwin are futile.

V.     **CONCLUSION**

Plaintiff's proposed Fifth Amended Complaint largely amounts to the repleading of prior allegations and alleging new, mostly time-barred claims. If permitted, the proposed amendment will unduly delay this case and prejudice Defendants. Lastly, the newly added claims in the proposed amendment fail to sufficiently state claims for relief. Accordingly,

**IT IS** on this 28th day of September 2020,

**ORDERED** that Plaintiff's Motion to Amend [ECF No. 126] is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to send a copy of this Order to Plaintiff's address of record by regular U.S. mail; and it is further

**ORDERED** that this Order **terminates** ECF No. 126; and it is further

**ORDERED** that under a separate Order the Court will enter a Scheduling Order to ensure the timely completion of discover.

s/ *Douglas E. Arpert*
_____
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**