# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| KELVIN RAY LOVE, | : | |
| | : | Civil Action No. 17-cv-1036 (BRM) (DEA) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN DOES, et al., | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Bruce Davis, Imam J. Elchabi, Imam Suluki, and Charles Warren, Jr. (collectively, "Defendants") seeking to dismiss Plaintiff Kelvin Ray Love's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 154.) Plaintiff filed his Opposition to Defendants' Motion (ECF No. 160), Defendants filed a Reply (ECF No. 162), and Plaintiff filed a Response (ECF No. 163). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND[1]

### A. Factual History

Plaintiff's Fourth Amended Complaint mirrors the majority of his Third Amended Complaint. (*See* ECF Nos. 45 & 104.) This Court summarized the facts alleged in Plaintiff's Third Amended Complaint in the Court's Opinion granting previous Defendant's George Hanuschik and

---

[1] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Mrs. Zimmerman's Motion to Dismiss (ECF No. 54). (*See* ECF No. 81 at 1-5.) Considering

Plaintiff reiterates verbatim his allegations, the Court will cite to the prior summarized factual

history. Plaintiff adds new allegations in this Fourth Amended Complaint, which the Court will

also summarize.

> This action arises out of a series of incidents that occurred on or about December 2011 through May 2015, while Plaintiff was an inmate at the New Jersey State Prison in Trenton, New Jersey. (ECF No. 104[2].)
> In December 2011, Plaintiff "submitted a request pursuant to ACA 10A: 17-5.9(d) to Imam Suluki . . . , the then New Jersey State Prison Chaplaincy Supervisor, asking that I be provided a weekly Sabbath day diet, having any choice of items to the discretion of the prison." (ECF No. 104 at 8.)

> Approximately one month later, on January 10, 2012, Imam Suluki informed Plaintiff that his request has been denied because his request "was not according to Jewish law." (*Id.*) Imam Suluki also informed Plaintiff that his request had been forwarded to the Religious Issues Committee ("RIC"). (*Id.*) Plaintiff followed up with Imam Suluki about the status of the RIC review three times in the months following the initial denial. (*Id.* at 8-9.) On May 15, 2012, Imam Suluki indicated that he did not have any information about the RIC's review of Plaintiff's request. (*Id.* at 9.)

> Plaintiff subsequently sent correspondence to Director Hicks requesting follow up information regarding his dietary accommodation request to the RIC. (*Id.*) Shortly thereafter Plaintiff received a response from Cindy Ford, Coordinator Inmate Correspondence Unit advising Plaintiff that his correspondence had been forwarded to New Jersey State Prison Administrator, Charles Warren. (*Id.*)

> Although Plaintiff does not specify the start date of the alleged conduct that resulted in the aforementioned grievances, he alleges the prison's failure to provide him an adequate kosher diet resulted in his suffering from nutritional deficiencies. (*Id.* at 10-11.) He contends that, between March 2013 through February 2014, he suffered a twenty-pound weight loss as a result of the inadequate dietary provisions. (*Id.* at 11.) He alleges Defendants George Hanuschik and

---

[2] The ECF docketing numbers have been altered to reflect the document pages from Plaintiff's Fourth Amended Complaint.

Christine Vaughan, "Cook House ITI's,"[3] provided kosher meals that were smaller portions because "there is no set standard menu for the Kosher diet as there is with all the other common fare diets served to the regular non-kosher prisoners." (*Id.* at 12.) Moreover, he alleges Defendant Hanuschik, as supervisor, "is aware of the ITI's practice of arbitrary and capricious selection but turns a blind eye to this practice." (*Id.*)

Plaintiff's dietary grievance stems not only from the quantity and quality of the food but also from the Defendants' alleged refusal to comply with his request that he be provided non-perishable foods before the start of the Sabbath, which he can consume once Sabbath ends. (ECF No. 104 at 9.)

> I sincerely believe that I should and must observe the seventh day Sabbath (day of rest) on which, to the best of my circumstances, I refrain from all work and observe a prohibition of not eating, on the Sabbath, foods prepared, cooked and or served to be on the Sabbath. Which my interpretation of the Holy Scriptures dictates I must observe from Saturday evening til [sic] Sunday evening, as I have consistently observed from before the year 2000. On or around what time the 8th Circuit Court of Appeals affirmed the decision /findings of the U.S. District Court of Arkansas directing the Arkansas Dept. of Corrections to provide me bread and peanut butter on Saturdays, before evening, to be consumed by me on Sundays during my seventh-day Sabbath.

(*Id.* at 57-8.)

Additionally, Plaintiff provides that he asked that he not receive meals on Sundays. (*Id.* at 9-10.)

Plaintiff also alleges he suffered retaliation in the form of disciplinary sanctions[4] as a result of lawsuits he filed in New Jersey Superior Court. (ECF No. 45 at 15[5].) Plaintiff does not elaborate on what the

---

[3] Defendants indicate that "ITI" is an Institutional Training Instructor. (ECF No. 54-1 at 5.)

[4] Defendants indicate Plaintiff was charged with Disciplinary charge .254-Refusing a work or housing assignment in violation of N.J. Admin. Code § 10A:4-4.1. (ECF No. 54-1 at 6.)

[5] It appears that Plaintiff's unintentionally failed to include two pages in his fourth amended complaint. This portion of Plaintiff's fourth amended complaint is a mirror image of Plaintiff's

specific subject of those court filings were other than that they were "civil law suits against NJSP employees (Docket Nos. L 558-15; L 559-15) for civil rights violations suffered while in Ad-Seg." (*Id.*) Plaintiff alleges that the disciplinary sanctions were in response to his court filings despite the defendants' pretext. In his complaint, he states, in pertinent part:

> On or around the years of 2013; 2014, because of two fights I had while in general population (gp) (Unit 2-A; Unit 2-R (Mess Hall)), I feared for my life and or safety, to return to gp from Administrative Segregation (Ad-Seg). Before my Ad-Seg sentence was completed I asked the Ad-Seg Unit Offices and sergeants to be put on Protective Custody (PC). I submitted numerous Grievances requesting PC and I appealed directly to SID and the New Jersey State Prison (NJSP) Administration for PC status. They all refused me PC status, so upon my release from Ad-Seg I refused to move to 1-Right Unit because I feared for my safety in gp. For refusing to move I was charged with an infraction and placed into detention, where I continued to request PC. Finally I was placed on temp. PC status and moved to a Management Control Unit (MCU) for several days, where I was given a hearing, asked to sign documents acknowledging my request for voluntary PC and told that I would not be recommended for PC status. At this point I had to choose between continuing to refuse to return to gp (which meant indefinite Ad-Seg time) or take my changed in gp. Because I had an Arkansas Habeas Corpus Petition to perfect I chose gp where I could research etc. in the law library, which I could not do in Ad-Seg. A change at possible freedom was worth risking my life.

> In gp, for over a year or more straight I was housed on Unit 4C North in cell #28 (single-lock[6]). While in cell #28 I filed (submitted for filing two (2) civil law suits against NJSP employees (Docket Nos. L 558-15; L 559-15) for civil rights violations suffered

---

third amended complaint. Therefore, the Court will consider and cite to pages 14 and 15 from Plaintiff's third amended complaint.

[6] Defendants submit in their brief that "single-lock" is a single occupancy cell. (ECF No. 54-1 at 6.)

while in Ad-Seg. On the morning of 5-20-15 I was moved to unit 1-Right (1-R). While on 1-R I overheard the Unit Offices saying that "it doesn't matter because he will be in detention soon anyhow." On the morning of 5-22-15 I was told that the lieutenant had called and told me to pack up to be moved to 4-C or 4A. I elected 4-C and when I got to 4-C I was ordered to lock in Cell # 5 (double-lock[7]). I refused and was placed in detention. I went to disciplinary court 5- 29-15 and Hearing Officer (H/O) Mrs. Zimmerman gave me a 90 days suspended sentence (max. amount for violation). Upon my release from detention I again refused to double-lock, went to court and received 180 days. The previous 90 days which were suspended plus the 90 days just received, to run consecutive.

While in detention, the first time 5-26-15 I received legal mail from the Mercer County Superior Court, postdated 5-19-15 (the day before I was moved to 1-R). In this correspondence were two (2) ORDERS from the Superior Court ruling that I had 45 days from 5- 8-15 to pay a $22.62 partial filing fee on each of the two separate complaints (L 558-15; L 559-15) or they would be dismissed without prejudice. Someone in the NJSP mailroom the morning of 5-20-15, or previous to same; upon receipt of my legal mail from the court either opened my legal mail or accessed the public records of the Court's filing of its then pending ORDER of DISMISSAL, and then notified pertinent custody and or other NJSP stay on or before the morning of 5-20-15 who then contrived to and in fact did retaliate against me by moving me to 1-R with intent of locking me up in Ad-Seg wherein I receive no State Pay, my sole source of income. Thereby inhibiting/preventing me from meeting the courts deadline to pay the partial filing fee.

(*Id.* at 15-16.)

(ECF No. 81 at 1-5.)

---

[7] Defendants submit in their brief that "double-lock" is a double occupancy cell. (ECF No. 54-1 at 6.)

Plaintiff's Fourth Amended Complaint additionally alleges the John Doe Lieutenants and or Sergeants "that moved [Plaintiff] the mornings of 5-20-15 and 5-22-15 maliciously prosecuted me, considering all facts alleged." (ECF No. 104 at 24.) Plaintiff submits they accomplished this, "because by law, they have the unbridled discretion to move me at will for any 'legitimate' penological purpose." (*Id.*)

Plaintiff also alleges "pertinent defendants" were deliberately indifferent to Plaintiff's health and safety when they failed to provide and ensure him reasonably sanitary and safe housing for a period of five months. (*Id.* at 4.) Plaintiff submits:

> On or about Mar., 2013 I was placed on 7-Wing, 7-Right Cell # 15, Tier #3 to serve approx. 364 days of Administrative Segregation (Ad-Seg) time. Upon entering cell # 15/3 I noticed the smell of sewage, and the rear metal wall directly over and affixed to the stainless steel recessed toilet was streaked with reddish brown tunnels of sewage waste water. I had to sit 'within' the rear wall in the recessed metal toilet on a metal outhouse like round hole to relieve myself. Often times sewage water would drip down on my head and body. In a matter of days the volume and viscosity of the dripping sewage water increased, forcing me to rig a makeshift gutter under the top rim of the square toilet in order to relieve myself without being drenched by sewage water. Before dripping on me this sewage water flowed in and out again among the wiring of three connected electrical junction boxes in-line directly over my head as I sat in the toilet. The first (top) junction box housed an incandescent light bulb, the second (middle) junction box housed a light switch and third (bottom) junction box housed four electrical outlets (two being surge suppressed). Subsequently the smell and volume of the sewage increased and small maggot like worms could be seen wiggling down the rivulets of sewage. That sewage and the contaminated air it produced, that I was forced to breath for 5 months was a serious threat to my health and water mingling with the electrical wiring subjected me to the real threat of electrocution every time I had to use the toilet.

(*Id.* at 4-5.) Plaintiff alleges the pertinent officers and their supervising sergeants and lieutenants on all three 8-hour shifts were "completely indifferent to his serious health and safety conditions."

(*Id.* at 5.) Plaintiff alleges they had to have known because they could not "fail to see and smell it as they looked into [his] cell." (*Id.*) Further, Plaintiff states:

> [I]t is my belief that cell # 15 had been condemned as unfit for human occupation before I was placed inside. And that the 3-Tier duty officers and their supervisors have documentation of this fact and conspired to place me in and keep me in cell #15 for 5 consecutive months.

(*Id.*)

Plaintiff also alleges "pertinent defendants" discriminated against him because of his "documented" handicap status. (*Id.* at 6.) Plaintiff alleges head officers refer to him as "retarded" and "idiot" and they would treat him with condescension and disparagement. (*Id.*) Plaintiff also alleges the officers would bring his Kosher food tray with seals opened, mouse dropping on the tray, and moldy fruit. (*Id.*) Plaintiff alleges the officers would also leave off food from the tray or not deliver the tray altogether. (*Id.*)

### B. Procedural Background

Plaintiff filed a Complaint in the Superior Court of New Jersey, Mercer County on August 7, 2015. (*See* ECF Nos. 136 at 1 & 1 at 2.) Plaintiff filed an Amended Complaint and a Second Amended Complaint against multiple John Does, George T. Hanuschik, Steven Johnson, Rev. W. Wilcox, Mrs. Ryan, Christine Vaughan and Mrs. Zimmerman. (*See* ECF Nos. 1 & 1-1.) Defendants Hanuschik, Johnson, Wilcox, and Zimmerman filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441(a), 1443 and 1446(b), arguing Plaintiff's federal claims should be brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 at 2.) According to Defendant's Notice of Removal, Defendant Ryan, although served with the Second Amended Complaint in state court, filed a Motion to Dismiss that was granted by the state court. (*Id.*)

Plaintiff filed a Motion to Remand opposing Defendants' Notice of Removal, arguing the removal was "invalid" because Defendants waived removal by failing to file the motion to remove within the "30-day time frame" as provided in 28 U.S.C. § 1441(c), and Defendants conspired with the New Jersey Superior Court clerk to "summarily, arbitrarily, prematurely" have Plaintiff's action dismissed. (ECF No. 6 at 4-5.) This Court denied Plaintiff's Motion to Remand on November 28, 2017. (ECF Nos. 26-27.)

Plaintiff filed a Motion to Amend the Second Amended Complaint on December 28, 2017 (ECF No. 34), which was granted on March 27, 2018. (*See* ECF No. 44.) Plaintiff Third Amended Complaint was nearly identical to the Second Amended Complaint, except that Plaintiff removed Defendant Ryan as a named Defendant and replaced Defendants Wilcox and Johnson with Defendants Warren and Suluki. (*See* ECF No. 1-1, *see also* ECF No. 34 at 4-23.) Plaintiff argued he inadvertently omitted Defendants Warren and Suluki. (*See* ECF No. 34 at 28.) Summons for Defendants Warren and Suluki were returned unexecuted. (ECF No. 55.) Plaintiff's Third Amended Complaint raised claims of First, Fifth, Eighth, and Fourteenth Amendment violations as well as a conspiracy claim. (*See* ECF No. 45.)

Defendants Hanuschik and Zimmerman moved to dismiss Plaintiff's Third Amended Complaint for failure to state a claim. (*See* ECF No. 54.) Plaintiff then filed a Request for Default against Defendants Johnson and Wilcox and a Request for Default against Defendants Davis and Elchabi. (*See* ECF Nos. 67 and 73.) On August 9, 2018, the Clerk entered a quality control message regarding Plaintiff's Request for Default against Defendants Johnson and Wilcox, explaining the request could not be granted "because the requested parties are no longer defendants in this matter." The Clerk entered a quality control message on November 9, 2018, denying Plaintiff's

Requests for Default against Defendants Davis and Elchabi "because the persons named are not parties in this case."

Plaintiff also filed two Motions to Substitute Party. (ECF Nos. 74 and 75.) In these Motions, Plaintiff sought, pursuant to Federal Rule of Civil Procedure 25, to substitute "Jane Doe" for Defendant Christine Vaughan and to substitute Defendants Davis and Elchabi for Defendants Johnson and Wilcox. (*See id.*) On January 31, 2019, this Court granted Defendants' Motion to Dismiss (ECF No. 54), denied Plaintiff's Motion to Strike (ECF No. 76), and granted Plaintiff's Motions to Substitute (ECF Nos. 74 and 75). (*See* ECF No. 82.)

Plaintiff then filed a Motion to Amend the Third Amended Complaint (ECF No. 89), which was granted on September 13, 2019. (ECF No. 103.) Plaintiff's Fourth Amended Complaint includes First, Eighth, Fourteenth Amendment claims, an RLUIPA violation, a 42 U.S.C. § 1985(1) claim, and a malicious prosecution claim. (*See* ECF No. 104.) Plaintiff raises a First Amendment Free Exercise Clause and Fourteenth Amendment Equal Protection violation against Defendants Warren and Suluki. (*Id.* at 7-10.)

Plaintiff sought an Order extending his deadline to serve Defendants Warren and Suluki. (*See* ECF No. 110.) The Court entered an Order on October 24, 2019, requiring either the NJDOC file, *ex parte* and under seal, the last known addresses of Defendants Warren and Suluki or that the New Jersey Attorney General agree to accept service on behalf of Defendants Warren and Suluki. (ECF No. 113 at 3.) The last known addresses for Defendants Warren and Suluki were filed, under seal, on October 30, 2019. (*See* ECF No. 114.) On January 2, 2020, Plaintiff moved for an Order revising the Court's Order (ECF No. 113) to direct the NJDOC to provide the last known addresses of Defendant Christine Vaughan and Department of Corrections Commissioner, Marcus Hicks. (ECF No. 123 at 1.) The Court directed the NJDOC to provide the last known

addresses for Ms. Vaughan and Mr. Hicks. (*Id.* at 3). Defendants explain that on February 5, 2020, the Office of the Attorney General for the State of New Jersey accepted service of Plaintiff's Fourth Amended Complaint on Mr. Hicks's behalf and filed Ms. Vaughan's last known address under seal. (ECF No. 136 at 18.) On February 6, 2020, Plaintiff filed a Motion to Amend the Fourth Amended Complaint. (ECF No. 126.)

On September 28, 2020, Magistrate Judge Douglas E. Arpert denied Plaintiff's Motion to Amend the Fourth Amended Complaint. (ECF No. 146.) Judge Arpert found Plaintiff's proposed Fifth Amended Complaint was a re-pleading of prior allegations, as well as alleging new, mostly time-barred claims. (*Id.* at 36.) Judge Arpert found the newly added claims failed to sufficiently state claims for relief. (*Id.*) Relevant here, Judge Arpert ruled Plaintiff was not permitted to rename Defendant Vaughan as a Defendant because Plaintiff previously substituted Jane Doe for Defendant Vaughan and Plaintiff was not permitted to rename a Defendant he intentionally sought to remove from this action. (*Id.* at 20.) Similarly, Judge Arpert denied Plaintiff's attempt to add Commissioner Hicks as a Defendant. (*Id.* at 26-27.) Judge Arpert explained Plaintiff had mentioned Hicks in prior complaints, indicating Plaintiff clearly knew about Hicks, yet he waited until the proposed Fifth Amended Complaint to name him as a Defendant. (*Id.*) Plaintiff filed a Motion to Appeal Magistrate Order on October 15, 2020. (ECF No. 151.) The Court denied the Motion to Appeal on May 26, 2021. (ECF No. 181.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Alleghany*, 515 F.3d 224, 228 (3d

Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations. *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]- 'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)). The pleadings

of *pro se* plaintiffs are liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must alleged sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

Defendants raise five arguments in support of their Motion to Dismiss. (*See* ECF No. 154-2.) First, Defendants argue Plaintiff's claims should be dismissed to the extent they are against Defendants in their official capacities. (*Id.* at 30-32[8].) Second, Defendants argue the claims against Defendants Warren and Suluki, as they are time barred by the State of New Jersey's Two- Year Statute of Limitations. (*Id.* at 25-29.) Third, Defendants argue, even if timely filed, Plaintiff's Fourteenth Amendment Equal Protection claim fails to plead sufficient facts. (*Id.* at 29-33.) Fourth, Defendants argue any claims against Defendants Warren and Suluki implicating the First

---

[8] The Court refers to the page numbers assigned by the Court's electronic filing system.

Amendment right to Free Exercise fails to state a plausible claim for relief. (*Id.* at 33-38.) Finally, Defendants argue to the extent the Court construes the Fourth Amended Complaint to assert any other claim against Defendants Warren, Suluki, Davis, and/or Elchabli Plaintiff has failed to plead personal involvement or supervisory liability. (*Id.* at 38-42.)[9]

### A.  Plaintiff's Official Capacity Claims

Moving Defendants first assert Plaintiff's claims against all Defendants in their official capacities should be dismissed because they are not "persons" subject to § 1983 liability. (ECF No. 154-2 at 30-32.)

A state official sued in his official capacity for monetary damages is not a "person" for purposes of § 1983. *See House v. Fisher*, No. 14-2133, 2016 WL 538648, at *15 (M.D. Pa. Feb. 11, 2016) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-71 (1989)); *Goode v. New Jersey Dep't of Corr.*, No. 11-6960, 2015 WL 1924409, at *10 (D.N.J. Apr. 28, 2015) (finding state officials sued in official capacities for monetary damages are not "persons" within meaning of § 1983); *Johnson v. Mondrosch*, No. 13-3461, 2013 WL 12085239, at *6 (E.D. Pa. Dec. 3,

---

[9] Plaintiff also raises an Eighth Amendment deliberate indifference to prison conditions claim regarding sewage in his cell, a Fourteenth Amendment cruel and unusual punishment claim regarding the sewage in his cell and the quality of the Kosher food that was provided to him, a claim of discrimination based on his "special needs" status, a § 1985 conspiracy claim, and a malicious prosecution claim. Plaintiff also titles a claim as a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. While Plaintiff does not elaborate on that claim, however, it appears to the Court that Plaintiff is asserting the claim in relation to the Kosher meals that were delivered to him in opened and moldy conditions. (*See* ECF No. 104 at 4-7, 22-25.) Defendants do not address these claims in detail, as the claims are not directed at the moving Defendants. Rather, the claims are directed at "pertinent defendants," "John Doe Lieutenants and Sergeants," and "3-Tier duty officers and their supervisors." (*See* ECF No. 154-2 at 45-49, *see also* ECF No. 104 at 4-7, 22-25.)

2013) (same). Therefore, Plaintiff's claims for monetary damages against all Defendants, moving and not moving, in their official capacity are dismissed with prejudice.[10]

### B. Statute of Limitations

Defendants argue Plaintiff's First Amendment Free Exercise and Fourteenth Amendment Equal Protection claims must be dismissed because they are time-barred. (*See* ECF 154-2 at 32-36; *see also* ECF No. 161.) A statute of limitations defense is generally unavailable in a motion to dismiss filed under Rule 12(b)(6). However, there is an exception, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishebein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *see also Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Here, the Court finds, on the face of Plaintiff's Fourth Amended Complaint, a determination cannot be made on the statute of limitations issue.

"It is well-settled that actions seeking a remedy under 42 U.S.C. § 1983 are governed by the statute of limitation applicable to state personal injury claims, depending on where the cause of action accrued." *Cnty. of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007) (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). A two-year statute of limitations period applies to personal injury claims in New Jersey. N.J. Stat. Ann. 2A:14-2. Thus, claims brought pursuant to § 1983 that accrued in New Jersey are subject to a two-year statute of limitations period. While the statute of limitations period is determined by state law, federal law governs when the cause of action accrued. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). A cause of action accrues once the plaintiff has a "complete and

---

[10] Any claims dismissed are dismissed with prejudice, as the Court had ruled Petitioner can no longer amend his Complaint.

present cause of action" meaning "the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L.Ed.2d 553 (1997). Importantly, the date of accrual stems from the date when a plaintiff knew or should have known the injury occurred, not when a plaintiff realizes he or she realizes the injury gives rise to a legally cognizable claim. *Pederson v. Nat'l Collegiate Athletics Ass'n*, No. 14-2544, 2015 WL 7573200, at *3 n.5 (D.N.J. Nov. 24, 2015).

Defendants argue, at the latest, Plaintiff's cause of action accrued on July 23, 2012, when Defendant Warren denied Plaintiff's request for a "weekly Sabbath Day diet." (ECF No. 154-2 at 28.) Plaintiff argues in his reply brief he is entitled to equitable tolling of the statute of limitations. (ECF No. 161-1.) Plaintiffs generally bear the burden of demonstrating a tolling doctrine applies. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997); *see also Pizio HTMT Glob. Sols.*, 555 F. App'x 169, 176-77 (3d Cir. 2014); *see also Hammer v. Cardio Med. Prod., Inc.*, 131 F. App'x 829, 831 (3d Cir. 2005). The Supreme Court and Third Circuit have both noted the doctrine of equitable tolling should be applied sparingly. *Winder v. Postmaster Gen. of U.S.*, 528 F. App'x 253, 256 (3d Cir. 2013) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Here, Plaintiff asserts he filed civil complaints in the Mercer County Superior Court regarding these claim in October 2013 and April 2014, and the Mercer County Superior Court failed to inform Plaintiff until May 2015 that his complaints were not filed for failure to pay the fee. (*See* ECF No. 160.) The Court recognizes Defendants argue Plaintiff's own failure to comply with a procedural requirement should not toll the statute of limitations. However, based on Plaintiff's allegation that it took the Mercer County Superior Court two years to inform him of his procedural deficiency, the Court finds dismissal as time-barred is not appropriate at the motion to dismiss phase.

### C. Plaintiff's First Amendment Free Exercise Clause Claim

Defendants Warren and Suluki move for the dismissal of any potential First Amendment Free Exercise claim. (ECF No. 154-2 at 40-45.) Defendants assert Plaintiff fails to allege he was denied the opportunity to practice his faith, or that Defendants deprived him of Kosher food in a way that was harmful to his health. (*Id.* at 43.) The law regarding a prisoner's ability to practice his or her faith is well-settled and, at this stage of the litigation, warrants denial of the Motion to Dismiss.

The Court construes Plaintiff's Complaint to raise a claim that Defendants Warren and Suluki violated his First Amendment right to Free Exercise based on his allegation that he was denied his request for food to enable him to observe his Sabbath. (ECF No. 104 at 7-10.) Plaintiff states he sincerely believes he "should and must observe the seventh day Sabbath." (*Id.* at 7.) Plaintiff submits his interpretations of the holy scripture dictates he not eat anything prepared, cooked or served to him on his Sabbath, which is he believes is sundown Saturday to sundown Sunday. (*Id.* at 7-8.) Plaintiff asserts he submitted a request to Defendant Suluki that Plaintiff be provided "a weekly Sabbath day diet, leaving any choice of food items to the discretion of the prison." (*Id.* at 8.) Plaintiff states he asked to be provided "non-perishable Kosher foods on Saturdays, in the morning, for [his] consumption on [his] Sunday Sabbath observances." (*Id.* at 9.) His request was denied "on the grounds that although sincerely held my beliefs are not according to Jewish law." (*Id.* at 8.) Plaintiff's request was forwarded to the Religious Issues Committee ("RIC"). (*Id.*) Following no response from RIC, Plaintiff sent an appeal to Director Hicks, which was forwarded to Defendant Warren. (*Id.* at 9.) Plaintiff asserts Defendant Warren denied his request to be provided a Sabbath day diet. (*Id.*) Plaintiff alleges in denying his request, Defendants

Warren and Suluki violated the rights afforded to him by the Supreme Court's decision in *Cruz v. Beto*, 405 U.S. 319 (1972). (*Id.* at 10.)

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987). These factors require courts to consider: (1) whether the regulation bears a "valid, rational connection" to a legitimate and neutral government objective; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives." *Id.* at 89–90, 107 S. Ct. 2254; *see also Fraise v. Terhune*, 283 F.3d 506, 513–14 (3d Cir. 2002) (citations omitted).

Plaintiff submits he sincerely believes his religion requires him to observe the "seventh day Sabbath," which prohibits him from eating foods "prepared, cooked and or served to [him] on the Sabbath." (ECF No. 104 at 7-8.) Defendants argue Plaintiff's claim should be dismissed because it does not allege he was denied the opportunity to practice his faith. (*Id.* at 43.) The Court disagrees. Plaintiff alleges he is being denied the opportunity to refrain from eating foods delivered or cooked on his Sabbath, which is how he practices his faith. The United States Court of Appeals for the Third Circuit has recognized a clearly established right "to a religiously-motivated diet, so long as the views underlying the diet are '(1) sincerely held, and (2) religious in nature, in [his] scheme of things.'" *Parkell v. Senato*, 704 F. App'x 122, 127 n.11 (3d Cir. 2017) (quoting *DeHart v. Horn,* 227 F.3d 47, 52 (3d Cir. 2000), and *Africa v. Pennsylvania*, 662 F.2d 1025, 1029 (3d Cir.

1981)). Therefore, under *Turner*, we must determine whether there is a rational connection between the prison's refusal to give Plaintiff prepacked kosher meals on Saturday for consumption Sunday and a legitimate penological interest. Defendants also argue standardized meal practices serve a legitimate penological interest. (ECF 154-2 at 44.) The Court recognizes the prison has an interest in an efficient food system. (*See DeHart*, 227 F.3d at 52-53.) However, that does not end the Court's inquiry. The Court must consider the burden on whether there are alternative means for Plaintiff to engage in his constitutionally protected activity, the impact an accommodation would have on the prison as a whole, and if there are any available alternatives. *Turner*, 482 U.S. at 89-90. Defendants have not argued any of these points. Thus, the analysis of Plaintiff's claim requires a factual inquiry that is not appropriate at this initial stage of the litigation given Plaintiff's allegations that the denial of kosher meals delivered on Saturday for Sunday substantially interferes with his First Amendment right to exercise his faith.

### D. Plaintiff's Fourteenth Amendment Equal Protection Claim

Defendant's Warren and Suluki move for the dismissal of Plaintiff's Fourteenth Amendment Equal Treatment claim, arguing Plaintiff fails to plead facts sufficient to support a finding he was treated differently from similarly situated persons. (ECF No. 154-2 at 36-40.)

Plaintiff claims Defendants Warren and Suluki violated his Fourteenth Amendment right to be provided with an equal means to celebrate and observe the Sabbath. (ECF No. 104 at 7-10.) Plaintiff argues "Muslims are provided a means to observe Ramadan, the Christians are provided/allowed banquets, and the recognized practicing Jews are provided the means to observe Passover," and Plaintiff is being denied a reasonable opportunity to pursue his faith. (*Id.* at 10.)

To prevail on an equal protection claim, a plaintiff must present evidence he has been treated differently from persons who are similarly situated. *See City of Cleburne v. Cleburne Living*

*Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985). *Turner* is equally applicable to prisoners' equal protection claims. *See Williams v. Morton*, 343 F.3d 212, 221 (citing *DeHart*, 227 F.3d at 61).

Plaintiff alleges he is treated differently than other inmates because of his religion. Specifically, Muslim and Jewish prisoners are provided means to observe their beliefs during Ramadan and Passover, respectively, and Christians are "provided/allowed banquets." (ECF No. 104 at 10.) Defendants argue Plaintiff's allegations amount to Plaintiff arguing that, "in refusing to deviate from the standard practice of serving Saturday meals on Saturdays and Sunday meals on Sundays, the prison's officials somehow violated his rights to equal protection." (ECF No. 154-2 at 39.) For the purposes of this Motion to Dismiss, the Court must accept as true all factual allegations in the Fourth Amended Complaint. *See Phillips*, 515 F.3d at 228. Therefore, without further information regarding what accommodations are made for Muslim and Jewish prisoners during Ramadan and Passover, the Court is unable to determine if they are similarly situated individuals. As such, Defendants' Motion to Dismiss is denied as to this issue.

### E. Qualified Immunity

Defendants further contend Plaintiff's claims must be dismissed on the basis of qualified immunity. (ECF No. 154-2 at 44-45.) They argue there is no binding Third Circuit case mandating prisons to accommodate an inmate's religion by providing him with extra meals on Saturdays, to be consumed on Sundays. (Id.)

"Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official violated the plaintiff's

constitutional rights and (2) that the constitutional right violated was clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."). A right is considered clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). While courts generally address the first prong−whether a constitutional violation is alleged−first, a court may exercise discretion in considering these elements in the order it sees fit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Third Circuit has established that defendants generally bear the burden of proving the affirmative defense of qualified immunity. *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006). On this motion, however, Defendants' briefing on qualified immunity consists of brief boilerplate legal standard and a citation to one case which found it was not clearly established that a prisoner was "entitled to place on the state the burden of furnishing separate religious services for them" on the state. (ECF No. 154-2 at 44 (citing *Sharp v. Johnson*, 669 F.3d 144, 159-60 (3d. Cir. 2012).) As noted above, the Third Circuit has recognized there may be circumstances in which a prison's failure to accommodate religious dietary practices becomes a violation of First Amendment rights. *Senato*, 704 F. App'x at 127 n.11 (quoting *DeHart*, 227 F.3d at 52). Given the inadequacy of this briefing, the Court is left unable to evaluate Defendants' defense of qualified immunity.[11]

---

[11] The Court notes qualified immunity only shields Defendants in their individual capacities and only against claims for damages. See *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 572 n.151 (3d Cir. 2017); *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006). A qualified

**F. Plaintiff's Failure to Allege Defendants Warren, Suluki, Davis and Elchabi**

Next, Defendants Warren and Suluki submit Plaintiff failed to allege their personal involvement in any claims other than the Fourteenth Amendment Equal Protection claim and the First Amendment Free Exercise claim that pertains to Plaintiff being provided food on Saturdays for the Sabbath. (ECF No. 154-2 at 45-46.) Therefore, Defendants Warren and Suluki assert any First Amendment retaliation claims, additional First Amendment free exercise claims, First Amendment right to access claims, Eighth Amendment conditions of confinement claims, Eighth Amendment cruel and unusual punishment claims, additional Fourteenth Amendment equal protection claims, conspiracy claims arising under 42 U.S.C. § 1985, and a claim of malicious prosecution should be dismissed. (*Id.*)

Defendants Davis and Elchabi submit Plaintiff failed to allege their personal involvement in any claims in the Fourth Amended Complaint. (*Id.* at 46-47.) Defendants Davis and Elchabi argue they are not mentioned throughout the entirety of the Fourth Amended Complaint. (*Id.*) Defendants Warren, Suluki, Davis and Elchabi also argue Plaintiff has not alleged any facts that support a supervisory liability claim. (*Id.* at 47-49.)

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence,

---

immunity defense would not affect a Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA) claim, which seeks injunctive relief against Defendants in their official capacity. Considering Plaintiff's *pro se* status, the Court construes Plaintiff's claim as also raising an RLUIPA argument. A viable claim under RLUIPA must establish Plaintiff had a sincerely held religious belief and a prison policy or official practice substantially burdened his exercise of those religious beliefs. Plaintiff explicitly alleges his Sabbath day belief is "sincerely" held and he is being denied the opportunity to pursue his faith. (See ECF No. 104 at 7-10.) Defendants do not move for dismissal of this claim, so the Court does not consider whether an RLUIPA claim should be dismissed.

however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

This Court analyzes supervisory liability claims using one of two theories. A supervisor can be held liable if they "established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). In order to establish a supervisory liability claim, Plaintiff would have to show: (1) the prison official had knowledge of the prisoner's problem; (2) "the official either failed to act or took any ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight"; and (3) a causal connection exists between the official's response and the harm. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) (holding evidence was insufficient to hold Commissioner of Corrections liable for constitutional violations).

Plaintiff makes no allegations against Defendants Warren, Suluki, Davis or Elchabi that support either theory of supervisory liability. Aside from the Fourteenth Amendment Equal Protection claim discussed above involving Defendants Warren and Suluki, Plaintiff fails to mention Defendants Warren or Suluki in any of the remaining claims. Plaintiff also fails to assert any claims against Defendants Davis or Elchabi in the entirety of the Fourth Amended complaint. Plaintiff lists Defendants Davis and Elchabi in the Defendants caption, however, the remainder of the Fourth Amended Complaint is devoid of their names.

The Motion to Dismiss admits all four Defendants have held supervisory positions at the New Jersey State Prison. (ECF No. 154-2 at 47.) Defendant Warren was formerly employed as the Administrator of New Jersey State Prison, Defendant Suluki was formerly employed as the prison's Chaplaincy Supervisor, and Defendants Davis and Elchabi took over these roles, respectively, several years later. (*Id.*) However, Defendants Warren, Suluki, Davis and Elchabi argue Plaintiff cannot hold them as supervisors vicariously liable for the conduct of others merely because they are supervisors. (*Id.*)

Although Defendants admit they were supervisors (ECF No. 154-2 at 47) Plaintiff fails to make any argument how the moving Defendants personally violated Plaintiff's rights or directed other to do so. As such, the Fourth Amended Complaint is dismissed with prejudice as it pertains to any potential claims against Defendants Davis and Elchabi for failure to allege any personal involvement by Defendants Davis and Elchabi. *See Rode*, 845 F.2d at 1207. The Fourth Amended Complaint is also dismissed with prejudice as it pertains to any claims, other than the Fourteenth Amendment equal protection claim regarding the Sabbath and the First Amendment free exercise claim regarding the Sabbath, against Defendants Warren and Suluki, for failure to allege any personal involvement. *See id.*

### G. Plaintiff's Claims against Defendant Vaughan

Plaintiff raises several claims against non-moving Defendant Vaughan. (ECF No. 10-16.) Plaintiff alleges a First Amendment Free Exercise Clause challenge, Eighth Amendment deliberate indifference challenge, and Fourteenth Amendment Equal Treatment challenge arguing the kosher meals Plaintiff was provided were lacking in quantity and nutritious value. (*Id.*)

As explained by the Court above, on September 28, 2020, Magistrate Judge Douglas E. Arpert denied Plaintiff's Motion to Amend the Fifth Amended Complaint. (ECF No. 146.) In that

decision, Judge Arpert ruled Plaintiff was not permitted to rename Defendant Vaughan as a Defendant because Plaintiff previously substituted Jane Doe for Defendant Vaughan and Plaintiff was not permitted to rename a Defendant he intentionally sought to remove from this action. (*Id.* at 20.) Plaintiff filed a Motion to Appeal Magistrate Order on October 15, 2020. (ECF No. 151.) The Court denied the Motion to Appeal on May 26, 2021. (ECF No. 181.) As Plaintiff's attempt to rename Defendant Vaughan as a Defendant in this matter has been previously denied by the Court, any claims against Defendant Vaughan in the Fourth Amended Complaint are dismissed with prejudice.

### H. Plaintiff's Retaliation Claims

Plaintiff reiterates his retaliation accusations against unnamed John Doe officers and Mrs. Zimmerman from his Third Amended Complaint. (ECF No. 45 at 15-18, ECF No. 104 at 16-22.) The claim is still being brought against unnamed officers and Mrs. Zimmerman. (See *id.*) The Court previously reviewed this issue in response to Defendant Zimmerman's motion to dismiss (ECF No. 54) and dismissed the claim. (*See* ECF No. 81 at 11-16.) Plaintiff's retaliation claim again alleges the same facts against Mrs. Zimmerman and unnamed officers. Thus, the Court's dismissal of such claims will stand.

## IV. CONCLUSION

Based on the foregoing, Defendants' Warren and Shuluki Motion is **DENIED** as it relates to Plaintiff's First Amendment Free Exercise claim and his Fourteenth Amendment Equal Protection claim. Defendants' Davis and Elchabi Motion is **GRANTED** as Plaintiff failed to allege their personal involvement in any claims in the fourth amended complaint. The claims against the moving Defendants in their official capacity for monetary damages are dismissed with prejudice. Defendants' Warren and Shuluki Motion is **GRANTED** as it relates all claims other than

Plaintiff's First Amendment Free Exercise claim and his Fourteenth Amendment Equal Protection claim, as Plaintiff failed to allege their personal involvement in any other claims. Plaintiff's claims against Defendant Vaughan are dismissed with prejudice based on the Court's prior decisions. Plaintiff's retaliation claims are dismissed with prejudice based on the Court's prior decision.

The First Amendment Free Exercise claim, the Fourteenth Amendment Equal Protection claim and the RLUIPA claim remain against Defendants Warren and Suluki. The Eighth Amendment Deliberate Indifference Claim, the Fourteenth Amendment cruel and unusual punishment claim, the §1985 conspiracy claim, and the malicious prosecution claim remain against John/Jane Doe Defendants.

An appropriate order accompanies this Opinion.

Date: June 29, 2021

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**