UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELVIN RAY LOVE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1-9, et al.,<br><br>Defendants. | Civil Action No. 17-1036 (RK)<br><br><br>MEMORANDUM OPINION |

Plaintiff Kelvin Ray Love ("Plaintiff" or "Love") has four motions pending before this Court. He moves for reconsideration of the Court's prior Order denying his motion for a preliminary injunction. ECF No. 242. He also appeals the Magistrate Judge's Order denying his discovery requests and seeks an extension of time to file that appeal. ECF Nos. 244, 245. Finally, he moves for partial summary judgment on certain claims in his Fourth Amended Complaint. ECF No. 250. For the reasons explained below, the Court denies the motion for reconsideration. The Court grants Plaintiff's discovery appeal (and his motion to extend the time to appeal) in part (to the extent and only if the subject requested information had not been produced to defendant) and denies it in part and directs the Defendants to provide Plaintiff with the New Jersey State Prison shift schedules for May 20-22, 2015, within 10 days, if it has not already done so. The Court otherwise denies Plaintiff's appeal of the Magistrate Judge's decision. Finally, the Court denies without prejudice Plaintiff's motion for partial summary judgment.

I.  **Reconsideration of Plaintiff's Motion for a Preliminary Injunction**

Plaintiff seeks reconsideration of the Court's decision denying his motion for preliminary injunctive relief. On February 6, 2023, the Court denied Plaintiff's motion for preliminary injunctive relief because Love waited more than five years after he filed his Complaint to seek

1

preliminary injunctive relief. The Court found that this extensive delay in seeking preliminary injunctive relief undercut Plaintiff's claim of irreparable harm and denied relief on that basis.[1] *See* ECF No. 235 at 6.

On February 22, 2023, Plaintiff submitted for filing a motion for reconsideration, arguing that the Court should not have relied on delay because Plaintiff is seeking preliminary injunctive relief on First Amendment religious exercise claims. *See* ECF No. 242. A court will grant a motion for reconsideration only if the movant establishes: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)). Moreover, under Local Civil Rule 7.1(i), a party making a motion for reconsideration must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge ... has overlooked." D.N.J. Civ. R. 7.1(i). Generally, the movant may address only matters that were presented to the Court but were not considered by the Court in making the decision at issue. *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J. 1999). Plaintiff failed to comply with Local Civil Rule 7.1(i).

Plaintiff has failed to establish any of the three enumerated bases authorizing reconsideration: (1) Plaintiff has not demonstrated an intervening change in the controlling law; (2) Plaintiff has not cited new evidence that was not previously available; or (3) has not

---

[1] A party seeking preliminary injunctive relief "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

demonstrated the need to correct a clear error of law or to prevent manifest injustice. There is no basis to reconsider the Court's denial of Plaintiff's motion for preliminary injunction.

## II. Plaintiff's Discovery Appeal

On July 11, 2022, Plaintiff filed a motion to compel discovery and for sanctions. *See* ECF No. 231. On February 22, 2023, Judge Arpert held a conference on Plaintiff's motion and denied the motion on February 27, 2023. ECF Nos. 243, 241. On March 6, 2023, Plaintiff submitted for filing a motion to extend the time to appeal Judge Arpert's Order denying his motion to compel discovery and for sanctions. *See* ECF No. 244. On April 5, 2023, Plaintiff filed his appeal. ECF No. 245.

Under L. Civ. R. 72.1(c)(1), "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order[.]" The time to appeal may be relaxed under L. Civ. R. 83.2(b) in the Court's discretion. *See, e.g., Trobiano v. Lagano*, No. 20-10793, 2021 WL 1339198, at *1 (D.N.J. Apr. 9, 2021). The Federal Magistrates Act of 1968 ("FMA") provides that a District Court reviewing a Magistrate Judge's decision on a non-dispositive motion may reverse a Magistrate Judge's determination if it is "clearly erroneous or contrary to law." *Id.* (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L.Civ.R. 72.1(c)(1)). Under this standard, a finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Catamaran, Inc. v. M/V Leeway*, 120 F.R.D. 17, 21 (D.N.J. 1988).

Plaintiff challenges numerous aspects of Judge Arpert's decision denying his motion to compel discovery and for sanctions. The Court has reviewed the relevant record and the parties' arguments and discerns only one potentially outstanding unresolved issue in the Magistrate

Judge's decision. In Interrogatory #4, Plaintiff sought information regarding the John Doe staff members who conducted his transfer on May 20, 2015. In discovery, Defendants provided the record showing that the transfer occurred but stated that the NJDOC did not possess a record of which staff member conducted that transfer. After Plaintiff filed the motion to compel discovery and for sanctions, the Defendants conducted another search and provided a certification from Edward H. Haas, who stated the following: "New Jersey State Prison has provided a shift schedule for [the relevant] housing units on May 20-22, 2015. But the shift schedule does not state which staff member(s) conducted Plaintiff's transfer." *See* ECF No. 232-2, Certification of Edward Haas at ¶6. Similarly in their briefing, Defendants state that they learned that the "[NJ]DOC possesses shift schedules for the housing units in question on May 20-22, 2015, but those schedules do not identify who among the numerous staff members was responsible for Plaintiff's housing transfers." *See* ECF No. 232, Defendants Opposition Brief at 6. Neither the Haas Certification nor Defendants' Opposition Brief explicitly states that Defendants provided the May 20-22, 2015 shift schedules to Plaintiff in discovery, and Plaintiff appears to contend that Defendants have not provided these schedules to him.

The Magistrate Judge's Memorandum and Order reasonably presumed that Defendants provided these schedules to Plaintiff: "According to Defendants, New State Prison has provided Plaintiff with the shift schedule for the relevant housing units on May 20-22, 2015, but the shift schedule does not state which staff members on duty actually conducted Plaintiff's transfer." *See* ECF No. 241 at 6. Because it is unclear whether the Defendants provided these schedules to Plaintiff, and because Defendants have not provided a sound basis for denying Plaintiff this information in discovery, the Court will direct Defendants to provide Plaintiff with the shift

4

schedules for the relevant housing units on May 20-22, 2015, within 10 days, in the event they have not done so.[2]

The discovery appeal is otherwise denied.

### III. Plaintiff's Motion for Partial Summary Judgment

On April 21, 2023, Love filed a motion for partial summary judgment. ECF No. 250. Defendants oppose the motion as procedurally and substantively deficient.[3] ECF Nos. 256.

At the outset, Plaintiff fails to include a proper Rule 56.1 Statement of Facts ("Rule 56.1 Statement") setting forth the facts and evidence that supports his substantive claims for relief. As readily apparent below, Plaintiff's purported Rule 56.1 Statement fails to cite any facts or evidence to support his claims. It is but a cursory boilerplate recitation which clearly fails to comply with the Rule and otherwise fails to provide the court with any basis to award his request summary judgment relief. Plaintiff's document entitled, "Statement of the Material Facts No Genuine Issue to Be Tried", contains the following numbered paragraphs:

> 1. There is no genuine issue of fact that Plaintiffs Fourth Amended Complaint fails to state a claim upon which relief may be granted.
>
> 2. There is no genuine issue of fact that Plaintiff's Fourth Amended Complaint is barred by the doctrines of Res Judicata and/or Collateral Estoppel.

---

[2] The Court notes that Plaintiff's Fourth Amended Complaint names the John Doe Lieutenants and John Doe Sergeants who authorized and/or supervised Plaintiff's transfers on May 20 and May 22, 2015. Thus, it does not appear that Plaintiff is seeking to substitute all staff members on duty on those dates. The Court makes no determination about whether Plaintiff should be permitted to amend his Complaint to substitute the names of any John Doe Defendants. If Plaintiff seeks to substitute names for any of the John Doe Defendants, he must file an appropriate motion before the Magistrate Judge.

[3] In their briefing, Defendants state that their "cross-motion" for summary judgment must be granted; however, the Court agrees with Plaintiff that Defendants did not file a cross-motion for summary judgment, and, therefore, the Court addresses only Plaintiff's motion for partial summary judgment.

    3. There is no genuine issue of fact that Plaintiffs Fourth Amended Complaint is barred by way of the applicable statute of limitations.

    4. There is no genuine issue of fact that Plaintiff's Fourth Amended Complaint is barred by way of a prior judgment or settlement arising out of the same transaction.

    5. There is no genuine issue of fact as to answering Defendants good faith, fraud or malice at all relevant times.

    6. There is no genuine issue of fact that answering Defendants have not deprived Plaintiff of any right, privilege, or immunity secured to him by the U. S. Constitution or any act of Congress.

    7. There is no genuine issue of fact that answering Defendants have not deprived Plaintiff of any right, privilege, or immunity secured to him by the Constitution or laws of the State of New Jersey.

    8. There is no genuine issue of fact that answering Defendants are immune from liability pursuant to the common law doctrine of qualified immunity.

    9. There is no genuine issue of fact that Plaintiffs damages, if any, were the result or his own actions or inactions.

    10. There is no genuine issue of fact that damages, if any, were the result of the actions of persons and/or entities over whom Answering Defendants had no control.

    11. There is no genuine issue of fact that Plaintiff failed to exhaust his administrative remedies.

    12. There is no genuine issue of fact that Plaintiff's Fourth Amended Complaint is barred, precluded and/or limited pursuant to the Prison Litigation Reform act of 1995, 42 U.S.C. 1997(e).

    13. There is no genuine issue of fact that Plaintiff has failed to mitigate his damages.

    14. There is no genuine issue of fact that the matters alleged herein concern the internal administration and management of the State of New Jersey, Department of Corrections and therefore do not give rise to a cause of action.

*See* Plaintiff's SJ Motion at 9.

    Plaintiff also includes a Declaration setting forth additional facts supporting his motion. In the Declaration, Plaintiff avers that he sincerely believes he "must observe the Seventh Day Sabbath, which [he] understand[s] to cover the periods beginning [Saturday] nights at evening (the beginning of dark) and ending on [Sunday] nights at evening (the beginning of dark)." Plaintiff's

6

Declaration at ¶ 2. During the Seventh Day Sabbath Plaintiff is "prohibited by [his] faith from eating foods prepared and or served to me." *Id.* at ¶ 3. Plaintiff receives a prison salary of $1.40 per week and maintains that this is his only source of funds. *Id.* at ¶ 4.

Plaintiff also contends that the prison does not serve Kosher entrees. Due to the "unKosher status of the 'Kosher' entrees" available at New Jersey State Prison, Plaintiff does not eat the Kosher entrees and is forced to consume non-Kosher foods "in order to survive." *Id.* at ¶¶ 5-6. Because Plaintiff believes that the prison serves non-Kosher entrees, he "restrict[s] [his] diet to the Kosher bread, cereal, two packs of peanut butter . . . , milk and/or milk substitutes, condiments, fruit juices and fresh fruit," and purchases quantities of peanut butter from the prison store; however, Plaintiff always runs out of peanut butter before he can purchase more from the commissary. *Id.* at ¶ 6. Moreover, in order to have acceptable food available on the Sabbath, Plaintiff must save food from Monday-Saturday. *Id.* at ¶ 9. Plaintiff states that he "cannot properly observe [his] Sabbath" and ends up hungry or must fast during his weekly mandated day of rest and refreshment, which substantially burdens his religious exercise. *Id.* at ¶¶ 8-9.

Attached to his motion as Exhibit II is a letter from Defendant Imam Rasul Suluki, dated December 29, 2011, which informs Plaintiff that his request for special religious meals "does not coincide with Jewish law" and is instead "a sincere belief" that must be forwarded to the Religious Issues Committee for review and recommendations. *See* ECF No. 250-1 at 14-15. Similarly, Plaintiff provides a letter from Defendant Charles Warren, dated June 28, 2012, indicating that Plaintiff's "special Sabbath meal request based on his understanding of the Torah falls outside the practice of the mainstream Jewish community" and must be referred to the Religious Issues Committee. *Id.* at 16.

Plaintiff also attaches medical records as Exhibit III. Plaintiff's medical records document that Dietician Barbara Ryan met with him on February 15, 2012, at his request, to discuss his Kosher diet. *Id.* at 17-19. Ryan noted that Love told her he "consumes everything offered on a Kosher diet" and lost weight in administrative segregation because he could not purchase items from the commissary. *Id.* at 19. Love also told Ryan that he fasts the whole day on the Sabbath. *Id.*

In addition, Plaintiff provides letters from prison administration regarding holiday menus for Ramadan and Passover along with the actual menus. *See* Exhibit I at 4-13. Plaintiff also provides documents showing the cost of Kosher meals in 2021 and a commissary catalog with prices.[4] *See* Exhibits VI, VII at 72-77.

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323= (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a

---

[4] Plaintiff provides additional exhibits, such as state court filings and grievances regarding his account statement, but it is unclear how they are related to his motion for summary judgment.

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Plaintiff's pro se status does not eliminate his obligation to allege specific facts, substantiated by evidence on the record. *See Benckini v. Hawk*, 654 F.Supp.2d 310, 316 n. 1 (E.D. Pa. 2009) (While they are held to "less stringent standards," pro se litigants are nevertheless "not permitted to totally ignore all rules and standards." (quotations omitted)); *but see Harp v. Rahme*, 984 F. Supp.2d 398, 409 (E.D. Pa. 2013), aff'd, No. 13-4808 (3d Cir. Aug. 13, 2014), ("[T]o deny any consideration to plaintiff's submissions [opposing] summary judgment due to deficiencies in formatting would conflict with the policy of construing liberally the submissions of pro se parties.").[5]

Here, Plaintiff has not met his initial burden to show that he is entitled to summary judgment because he has not provided a proper statement of material facts with supporting evidence for each fact. Local Civil Rule 56.1 requires that all motions for summary judgment accompanied by "a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1. The rule specifically requires that "[a] motion or summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." *Id.* As explained by another court in this District: "Procedure is not merely a cosmetic concern. Compliance is a precondition to a court reaching the merits of an argument, a burden

---

[5] Notably, in *Harp*, the plaintiff was opposing a summary judgment motion filed by the defendants and was not seeking judgment in his favor. *See id.*

9

equally and fairly imposed on all parties and one designed to make the resolution of cases expeditious, coherent, and just." *Stadler v. Abrams*, No. 13–2741, 2017 WL 4407929, at *8 (D.N.J. Oct. 4, 2017) (denying summary judgment as to municipal defendant that attempted to rely on another defendants' Rule 56.1 statement); *see also Rhodes v. Marix Servicing, LLC*, 302 F.Supp.3d 656, 666 (D.N.J. 2018) ("Without a statement of facts that has been attested to by the moving party, and the opportunity for the opponents to respond, the Court cannot properly determine the appropriate set of facts for the motion.").

Although Plaintiff submitted a document entitled "Statement of Material Facts No Genuine Issue to Be Tried," he misunderstands the purpose of Rule 56.1 Statement, which is to set forth, in numbered paragraphs, the facts about his claims that are not in dispute and to support each numbered fact <u>with evidence</u> showing that there are no disputed issues for trial and that he is entitled to judgment as a matter of law. Here, the Plaintiff's numbered paragraphs refer to affirmative defenses, such as res judicata, collateral estoppel, immunity, qualified immunity, and exhaustion, but he does not provide any legal arguments showing that he is entitled to summary judgment on any of these defenses or even explain why he is seeking summary judgment on these issues.

Instead, Plaintiff argues in his brief that he is entitled to summary judgment on his Fourteenth Amendment equal protection claim and his First Amendment free exercise claim, which are brought pursuant to 42 U.S.C. § 1983. He also appears to seek summary judgment on his claims brought pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"). These claims relate to prison officials' refusal to provide Love with a Sabbath Day diet.

Plaintiff argues that he is entitled to summary judgment on his equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (quoting U.S. Const. Amend. XIV, § 1.) "To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on an equal protection claim, Love must also provide evidence of intentional discrimination. *Washington v. Davis*, 426 U.S. 229, 240 (1976).; *see also Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x. 111, 118 (3d Cir. 2017) (discussing the pleading standard). "[I]ntentional discrimination based on religious affiliation must survive heightened equal-protection review." *Hassan*, 804 F.3d at 301. To state a claim, the plaintiff's "religious affiliation must have been a substantial factor in that different treatment."[6] *Id.* at 294 (citing *Washington*, 426 U.S. at 235; *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979)).

Plaintiff's briefing and exhibits suggests that prison officials accommodate the religious beliefs of Jewish and Muslim prisoners by providing them with holiday meals for Ramadan and Passover. Plaintiff, however, is not asking for a special diet for major holidays such as Passover and Ramadan; rather he is seeking a weekly Sabbath day diet because he believes he cannot eat food prepared or served by others on the Sabbath. Thus, he is not similarly situated to other Jewish or Muslim prisoners who are receiving occasional holiday meals that accommodate their religious

---

[6] The Third Circuit has not determined whether heightened review of such claims involves strict scrutiny or an intermediate level of review. *Id.* at 301. Thus, at a minimum, more than a rational basis is required to permit intentional discrimination based on religion. Strict scrutiny applies to race-based discrimination claims. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

11

beliefs. Nor has Plaintiff provided evidence that his religious beliefs are a substantial factor in the difference in treatment or that the difference in treatment amounts to intentional discrimination. For these reasons, Plaintiff's motion for summary judgment on his equal protection claim is denied without prejudice.

The Court next addresses Plaintiff's First Amendment claim. "The Free Exercise Clause of the First Amendment provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....'" U.S. Const. amend. I. *Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003), as amended (May 29, 2003). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted)). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51-52 (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir. 1981)). Assuming a sincerely held religious belief is established, "a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974)).

Whether an inmate's constitutional rights have been impermissibly burdened is governed by the four-part test set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, (1987). To establish a free exercise violation under *Turner*, a plaintiff must show that the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. "[U]nder the *Turner* framework, four factors must be considered in assessing the reasonableness of such regulations." *Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002). Those

factors are (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;] (2) whether "there are alternative means of exercising the right that remain open to prison inmates[;] (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[;]" and (4) the existence or absence "of ready alternatives...." *Id.* at 89-90.

Plaintiff's brief relies primarily on an Eighth Circuit decision in which he successfully challenged a similar restriction while incarcerated in Arkansas more than 20 years ago. In *Love v. Reed*, 216 F.3d 682 (8th Cir. 2000), the Eighth Circuit affirmed the district court's determination that the prison placed a substantial burden upon Love's ability to practice his religion based on the prison's refusal to allow Love to store food in his cell. As he does here, Love maintained that he had converted to the "Hebrew religion," which required strict Sabbath observance. *Id.* at 685–86. His beliefs prevented him from eating food prepared by others or receiving food from others on the Sabbath. *Id.* at 686. The prison refused to allow him to store peanut butter and bread from the kitchen in his cell, which he claimed would allow him properly to observe the Sabbath. *Id.* The prison argued that Love could purchase food from the commissary, but the district court concluded that the prison had violated Love's rights under the Free Exercise Clause. *Id.* It found that Love proved that he was indigent and, in any event, that any money he did receive must be used to purchase food from the commissary first, requiring Love to "exhaust alternative means of observing the Sabbath before seeking an accommodation." *Id.* at 689. The Eighth Circuit agreed that Love's indigency would mean that the dietary restrictions placed a substantial burden upon his ability to practice his religion and that the prison must accommodate him but only after he

"exhaust [ed] alternative means" by purchasing meals from the commissary with his own funds. *Id.* at 689–90.

From the outset, the Eighth Circuit's decision is not binding on this Court, which must analyze Third Circuit law in determining whether Plaintiff's First Amendment rights have been violated. Notably, under Third Circuit law, a central First Amendment inquiry is "whether the inmate has alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice." *Fraise v. Terhune*, 283 F.3d 506, 518 (3d Cir. 2002) (quoting *Dehart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000) (quotations omitted)); *see also Shelley v. Metzger*, 832 F. App'x. 102, 104 (C.A.3 (3d Cir. 2020). In *Payne v. Doe*, 636 F. App'x. 120, 121-22 (3d Cir. 2016), for example, the Third Circuit affirmed the grant of summary judgment where the plaintiff claimed that the defendants placed a substantial burden on the exercise of his religious beliefs during Ramadan in 2012. The plaintiff alleged that, by refusing to provide him with Ramadan evening meals and sahur bags (a cold breakfast meal in a brown bag for predawn consumption) that also accommodated his lactose intolerance and allergies to onions and tomatoes, he was forced to choose between a religious diet containing some foods he was unable to eat or a therapeutic diet delivered at times when his religious beliefs required him to fast. *Id.* The District Court granted summary judgment on the plaintiff's First Amendment claim, and the Third Circuit "agree[d] with the District Court's First Amendment analysis." The Third Circuit provided the following reasoning:

> Here, the summary judgment record showed that Payne did not lack alternative means of observing Ramadan. Either of the alternatives offered by the defendants—receiving the regular Ramadan meal tray and avoiding those foods with cheese, onions and tomatoes, or receiving his therapeutic meal trays at the usual time and retaining them in his cell for several hours until after the fast ended at dusk— were sufficient to both accommodate his religious practices and provide him with a nutritionally adequate diet." As the District

14

> Court noted, the Ramadan menu that Payne submitted with his brief in opposition to summary judgment did not show that cheese, onions, or tomatoes were so preponderant as to render the Ramadan meals nutritionally inadequate. Accordingly, summary judgment in favor of the remaining defendants on Payne's First Amendment claim was proper.

*Id.* at 124.

Like the plaintiff in *Payne*, Love is asking prison officials to provide him a religious diet at specific times and challenges the nutritional adequacy of his religious diet. Love also claims that the Kosher entrees at the prison are not actually Kosher, that he is forced to consume non-kosher food that is nutritionally inadequate, that he must either buy food from the commissary during the week and/or save his leftover food to eat on the Sabbath, and that he often goes hungry on his Sabbath. Love provides no evidence, however, that the Kosher entrees provided at the prisoner are not actually Kosher. Moreover, although Plaintiff has attached to his motion what appears to his prison medical records showing that he suffered a 20-pound weight loss in the 2012 timeframe, he has not provided sufficient evidence that prison official's failure to accommodate his religious diet caused this weight loss or that his religious diet is nutritionally inadequate. Although Plaintiff may be able to create a triable issue of material fact regarding whether prison officials have sufficiently accommodated his religious beliefs and the nutritional adequacy of the religious diet offered to him, he has not shown that he is entitled to judgment as a matter of law on this claim. As such, summary judgment in his favor is denied without prejudice.

Finally, Plaintiff argues that he is entitled to relief under RLUIPA. That statute prohibits the government from imposing a "substantial burden" on a prisoner's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a)(1)–(2). A substantial burden exists where (1) "a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally

available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit"; or (2) "the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Therefore, to establish a prima facie case of a RLUIPA violation, a prisoner must initially demonstrate that a substantial burden has been placed on his or her exercise of religious beliefs. *See Robinson*, 693 F. App'x at 115 (3d Cir. 2017) ("The threshold question in any ... RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.") (citing *Washington*, 497 F.3d at 277–78).

RLUIPA permits a plaintiff to "obtain appropriate relief against a government." *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012) (citing 42 U.S.C. § 2000cc-2). The statute defines "government" to include state entities, their agencies, and any other person acting under color of state law. *See id.* (citing 42 U.S.C. § 2000cc-5(4)(A)). Thus, RLUIPA applies to state agencies and to employees acting in their official capacities, but not their individual capacities. *See id.*; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 303 (3d Cir. 2016) ("[S]tate officials ... cannot be held individually liable under RLUIPA"); *Spada v. Klemm*, No. 1:22-CV-00478, 2023 WL 2290258, at *6 (M.D. Pa. Feb. 28, 2023) ("RLUIPA does not permit an action against state officials in their individual capacities."). Moreover, a plaintiff may not sue a state or state official for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 288, 293 (2011) (holding that states, by accepting federal funds, do not waive their sovereign immunity to suits for money damages under RLUIPA).

Under RLUIPA, the Plaintiff bears the initial burden of proving that the NJDOC's refusal to provide him with a Sabbath diet implicates his religious exercise. *See Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). Although RLUIPA protects "any exercise of religion, whether or not

16

compelled by, or central to, a system of religious belief," § 2000cc–5(7)(A), a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation. *Id.* (citation omitted).

As the Third Circuit explained in *Payne v. Doe*, 636 F. App'x. at 124–25, "RLUIPA was passed to provide "greater protection" for religious liberty than is provided by the First Amendment." (citing *Holt*, 574 U.S. at 362) (explaining that "[i]n applying *Holt* [*v. Hobbs*], courts must be careful not to import reasoning from cases such as *Turner* involving First Amendment rights). *Id.* Where the prisoner meets his burden of showing that the prison's policy substantially burdened his exercise of religion, *see generally Schlemm v. Wall*, 784 F.3d 362, 364–65 (7th Cir. 2015) (noting difficulty of determining when policy seriously burdens exercise of religion but accepting for summary judgment purposes that Navajo prisoner's inability to eat game meat at Ghost Feast had serious effect on exercise of his religion), the burden shifts to the prison to show its policy "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." *Payne*, 636 F. App'x. at 125 (quoting § 2000cc–1(a)).

A prisoner plaintiff's RLUIPA claim must be considered in light of the Supreme Court's decision in *Holt v. Hobbs*. There, prison officials argued that the prison's grooming policy represented the least restrictive means of furthering a broadly formulated interest in prison safety and security, but the Supreme Court stated that RLUIPA "contemplates a 'more focused' inquiry and 'requires [prison officials] to demonstrate that the compelling interest test is satisfied through application of the challenged [policy]' 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363. In this case, the challenged policy is the enforcement of the NJDOC's refusal to provide Plaintiff with

nonperishable food in his cell to accommodate his religious belief that he cannot prepare food on the Sabbath or have prepared food delivered by others.

Plaintiff may be able to show that Defendants have substantially burdened his religious exercise under RLUIPA; if so, the burden would then shift to Defendants to justify their refusal to provide him with the Sabbath diet he has requested. As noted above, Plaintiff has not provided a Rule 56.1 Statement, setting forth the undisputed material facts with respect to his RLUIPA claim and has not marshalled the evidence supporting his RLUIPA claim. Because Plaintiff has not met his burden to show that he is entitled to relief as a matter of law, the Court denies without prejudice his motion for summary judgment as to his RLUIPA claim.

### IV.   CONCLUSION

The Court denies reconsideration of its prior Order denying Plaintiff's motion for a preliminary injunction. To the extent not previously provided, the Court grants Plaintiff's discovery appeal in part (and his motion to extend the time to appeal) and directs the Defendants to provide Plaintiff with the New Jersey State Prison shift schedules for May 20-22, 2015, within 10 days, and shall by letter filed electronically in this matter confirm same. The Court otherwise denies Plaintiff's appeal of the Magistrate Judge's decision denying his motion to compel and for sanctions. The Court denies without prejudice Plaintiff's motion for partial summary judgment. An appropriate Order follows.

_____
Robert Kirsch
United States District Judge