NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELVIN RAY LOVE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1-9, et al.,<br><br>Defendants. | Civil Action No. 17-01036 (RK) (JTQ)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court upon a "Motion/Petition for Defendants to Show Cause why they should not be adjudged in Contempt of Court" seeking a finding of contempt, accompanied by injunctive and monetary relief filed by *pro se* Plaintiff Kelvin Ray Love ("Plaintiff") for purported violations of a December 2023 Settlement Agreement ("Settlement and Release Agreement"). (*See* ECF No. 272.) Defendants Imam Rasoul Suluki and Charles Warren, Jr. ("Defendants") oppose this Motion. (*See* ECF No. 275.) For the reasons below, Plaintiff's Motion is **DENIED**.

**I.    BACKGROUND**

     As a preliminary matter, the procedural background in this lawsuit is tortured. In this litigation alone, there are 276 docket entries, at least forty-five of which are motions filed by Plaintiff.[1] These motions include: four appeals of decisions by the Magistrate Judge (ECF Nos. 31; 151; 193; 245); six motions for extensions (ECF Nos. 110; 124; 183; 200; 244; 264); and at

---

[1] The Court separately notes Plaintiff's extensive litigation history, which appears to have originated during Plaintiff's incarceration in Arkansas. *See, e.g., Love v. Reed*, 216 F.3d 682 (8th Cir. 2000); *Love v. Oglesby*, 2 F. App'x 678 (8th Cir. 2001); *Love v. Andrews*, 8 F. App'x 602 (8th Cir. 2001); *Love v. McCown*, 38 F. App'x 355 (8th Cir. 2002).

least ten miscellaneous motions (ECF Nos. 25; 35; 61; 74; 75; 97; 101; 162; 206; 259). Now before the Court are Plaintiff's claims for relief surrounding the enforcement of the Settlement and Release Agreement which pertains to his sincerely-held belief in the "seventh-day Sabbath"—that is, a Sabbath that occurs on Sunday rather than on Saturday—and his ability to receive Kosher food to allow him to celebrate same. (*See* ECF No. 81 at 3.)

With this in mind, the Court only recites the facts relevant to the resolution of the present dispute. The underlying lawsuit was transferred to this Court on February 15, 2017. (*See* ECF No. 1.) After extensive motion practice and a settlement conference presided over by the Honorable Douglas E. Arpert, U.S.M.J. (ret.), a settlement was consummated sometime in early December 2023. (*See* ECF No. 272 at 7.) The case was ultimately dismissed with prejudice and without costs on December 13, 2023. (*See* ECF No. 271.)

The terms of the Settlement and Release Agreement provided Plaintiff with monetary and injunctive relief. In exchange for $5,000, Plaintiff agreed "to release and give up any and all claims and rights which he may have against Defendants in connection with the claims asserted" in the underlying lawsuit including "claims for attorney's fees and costs, any claims of which he is not aware, and any claims not mentioned" in the Settlement and Release Agreement. (ECF No. 272 at 19–23 ("Settlement and Release Agreement") § 1.) In addition to this monetary relief, Plaintiff obtained injunctive relief. The Settlement and Release Agreement states:

> In exchange for the Release, Defendants also agree, for the duration that [Plaintiff] is in the custody of the NJDOC, regardless of the facility in which [Plaintiff] is located, the NJDOC has agreed to supply [Plaintiff] on Saturday mornings, with prepackaged bread and peanut butter, or a prepackaged Kosher substitute, sufficient for three (3) meals to be consumed on Sundays (approximately three (3) packs of Kosher bread and six (6) packs of peanut butter). The NJDOC will inform the appropriate staff of [Plaintiff's] dietary accommodation. The NJDOC will begin supplying [Plaintiff] with this dietary accommodation by November 11, 2023.

(Settlement and Release Agreement § 3.) While the Court has not been provided with an executed copy of the Settlement and Release Agreement, the Court understands that Plaintiff executed same sometime during the first week of December 2023. According to Plaintiff's own Motion, Plaintiff states that he signed and "mailed/returned" the Settlement and Release Agreement on December 8, 2023. (ECF No. 272 at 7.)

On April 8, 2024, Plaintiff filed the Motion before the Court and named the NJDOC; Victoria L. Kuhn, Esq. (Commissioner of NJDOC); Miss Locks (Institutional Training Instructor); and Mingo Howard (Institutional Training Instructor) in same. (*See* ECF No. 272.) In the Motion, Plaintiff alleged that on several occasions, he had not been provided with Kosher bread and peanut butter as required under the Settlement and Release Agreement. (*See generally id.*) While nearly impossible to discern, Plaintiff appears to ask that the Court hold a number of individuals in contempt for failing to provide Plaintiff with Kosher bread and peanut butter on the following dates: November 11, 2023; November 18, 2023; and March 23, 2024. (*See* ECF No. 272 at 7–8.) Defendants oppose the Motion. (*See* ECF No. 275.) In support, they submitted the Certification of John Falvey ("Falvey"), Assistant Director in the Office of Legal and Regular Affairs for NJDOC which they state was "informed" by Jamil Howard, the Regional Food Services Supervisor of Operations for NJDOC. (ECF No. 275-1 ("Falvey Cert.") ¶ 4; ECF No. 275 at 4.).

In terms of the relief sought, Plaintiff seeks (1) a hearing; (2) "$1,000 for any and all further acts of noncompliance and contempt of this Court's Order(s)"; (3) that the named individuals "show cause why they should not be adjudged in contempt of this Court and punished for same" (suggesting actually that they should be "fine[d] and or imprison[ed]"); and (4) that Plaintiff recover "cost[s]" incurr[ed] in the preparation of his motion." (ECF No. 272 at 3, 9.) Defendants argue that the Motion before the Court is more properly considered a motion to enforce the

Settlement and Release Agreement and oppose Plaintiff's application *in toto*. (*See* ECF No. 275 at 6.) In addition, Defendants argue that Plaintiff is not entitled to monetary damages here because he signed the Settlement and Release Agreement. (*Id.*) Because Plaintiff seeks to hold various individuals in contempt and also seeks injunctive relief, the Court treats the present Motion as a combined motion for contempt and motion to enforce the Settlement and Release Agreement. *See Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*, 110 F. App'x 283, 287 (3d Cir. 2004) (noting that release language in a settlement agreement "did not extinguish the District Court's power to sanction . . . violation[s]" of prior court orders).

## II.    LEGAL STANDARD

According to the Third Circuit, proof of contempt "requires a movant to demonstrate '(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.'" *F.T.C. v. Lane Labs-USA, Inc.,* 624 F.3d 575, 582 (3d Cir. 2010) (internal citations omitted). These elements must be proven "by clear and convincing evidence, with ambiguities resolved in favor of the party charged with contempt." *In re AGR Premier Consulting, Inc.*, 550 F. App'x 115, 122–23 (3d Cir. 2014) (internal citations omitted). "[C]ourts should hesitate to adjudge a defendant in contempt when there is ground to doubt the wrongfulness of the conduct," although an "alleged contemnor's behavior need not be willful in order to contravene the applicable decree." *Id.* at 123 (internal marks and citations omitted). Generally, "good faith is not a defense to civil contempt." *F.T.C.*, 624 F.3d at 582.

In terms of a motion to enforce a settlement agreement, district courts in the Third Circuit "treat a motion to enforce settlement under the same standard of review as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the

validity of the settlement agreement." *Laverick v. Addiego*, No. 4-3443, 2020 WL 3546807, at *2 (D.N.J. June 30, 2020) (internal citations omitted).

## III.   DISCUSSION

At the outset, the Court has done its level best to attempt to interpret and decipher exactly what Plaintiff pleads in terms of the overall purported deficiencies in Defendants' compliance with the Settlement and Release Agreement. While Plaintiff cites specific dates, often, it is unclear to the Court as to what Plaintiff's grievance is specifically.[2] Given the difficulty in decoding Plaintiff's Motion, the Court is forced to rely upon Defendants' response, which advances three dates where Defendants purportedly did not comply with the Settlement and Release Agreement: November 11 and 18, 2023 and March 23, 2024.

After a thorough review of the pleadings, the Court notes the *de minimis* nature of most—if not all—of Plaintiff's claims of noncompliance. These include: (1) Defendants providing the proper Kosher food as required under the Settlement and Release Agreement to Plaintiff on a Friday instead of a Saturday; and (2) Defendants providing Kosher food substitutes, which are authorized under the Settlement and Release Agreement, rather than Kosher bread and peanut butter (which Plaintiff appears to prefer) on a Saturday. This Motion is denied.

---

[2] Sometimes it appears that Plaintiff is arguing that he received some, but not all, of his required Kosher food. By way of example, Plaintiff writes that "Served in my cell #124/2 on 2-Left minus the Settlement Agreement peanut butter and bread on 1-13-23 [sic]." (*See* ECF No. 272 at 7.) Plaintiff also wrote in another sentence: "Fed me in my cell #124/2 on Unit 2-Left without Settlement bread, on 1-27-24 [sic]." (*Id.*) On this point, the Court notes that Defendants only responded to allegations surrounding three dates: November 11 and 17, 2023 as well as March 23, 2024. (*See generally* ECF No. 275.) In Falvey's Certification submitted on behalf of Defendants, Falvey wrote that "[s]ince November 17, 2023, the [NJ]DOC has provided Plaintiff with agreed-upon meals on most Saturdays with limited exceptions[]" before explaining the NJDOC's supplying of a Kosher substitute on March 23, 2024. (Falvey Cert. ¶¶ 8–11.)

a. MOTION FOR CONTEMPT

Here, Plaintiff seeks to hold various individuals in contempt for purported violations of the Settlement and Release Agreement. (*See* ECF No. 272.) Plaintiff requests both monetary and injunctive relief. (*Id.*) In light of Plaintiff's *pro se* status, the Court interprets Plaintiff's request for monetary relief as a request for sanctions in a civil contempt action, rather than as monetary relief flowing from a breach of contract action as Defendants argue. *See Shmuely v. Transdermal Specialties, Inc.*, No. 17-01684, 2019 WL 3002942, at *4 (E.D. Pa. July 10, 2019) (explaining that in the civil contempt context, "sanctions may include an award that 'seeks to make reparation to the injured party and restore the parties to the position they would have held'" had the order been obeyed). Accordingly, the Court below analyzes the three dates where Defendants purportedly did not comply with the Settlement and Release Agreement to demonstrate why a finding of contempt is inappropriate here.

1. **November 2023**

Beginning with the two dates of purported noncompliance in November 2023—November 11 and 18—the first two elements of civil contempt are unsatisfied. *See F.T.C.*, 624 F.3d at 582 (stating the first two elements for proof of contempt are "(1) that a valid order of the court existed" and "(2) that the defendants had knowledge of the order" (internal citations omitted).) While the plain language of the Settlement and Release Agreement states that Defendants' obligations surrounding the provision of specified Kosher food to Plaintiff began on November 11, 2023, the Settlement and Release Agreement itself was not executed at this time. (*See* ECF No. 272 (noting that Plaintiff signed and returned "all materials" on December 8, 2023).) Indeed, correspondence in the record suggests that revisions to the Settlement and Release Agreement were made weeks after these purported violations occurred. (*See* ECF No. 272 at 17 (in a November 30, 2023 letter signed by Defense Counsel surrounding Plaintiff's revisions to the Settlement and Release

6

Agreement, requesting that Plaintiff return paperwork by mail "so that the settlement can be completed.") Precedent, and indeed, common sense, dictate that the Defendants cannot be held in contempt of a Settlement and Release Agreement that was not yet executed. *See Inst. for Motivational Living, Inc.*, 110 F. App'x at 287 (noting that a litigant could not be held liable under the terms of a settlement agreement and consent order that had been signed after the purported violation occurred and that "[u]ntil the order was entered," the litigant was under "no obligation to follow it").

Even assuming *arguendo* that the first two elements were satisfied and that the Settlement and Release Agreement was both (1) enforceable in November 2023 and (2) that the Defendants had knowledge of the Settlement and Release Agreement in November 2023, Plaintiff is still unable to show by clear and convincing evidence that Defendants disobeyed the Settlement and Release Agreement such that contempt is appropriate here.

With respect to Defendants' noncompliance on November 11, 2023, Defendants stated that they "made good faith efforts" but were unable to follow-through and provide Plaintiff with his Kosher food. (*See* Falvey Cert. ¶ 6; *see also* ECF No. 275 at 5.) While "good faith is not a defense to civil contempt," *F.T.C*, 624 F.3d at 582, the Court has grounds to "doubt the wrongfulness" of this lapse for the reasons stated above. *See In re AGR Premier Consulting, Inc.*, 550 F. App'x at 123. Similarly, on the second date where noncompliance allegedly occurred, November 18, 2023, Plaintiff was provided with Kosher bread and peanut butter. However, the food was mistakenly provided a day earlier on Friday, November 17, 2023. (Falvey Cert. ¶ 7.) For the reasons listed above—along with the fact that the Kosher food set forth by the Settlement and Release Agreement was actually provided to Plaintiff on this second date, just mistakenly provided a day earlier—Defendants here made reasonable efforts to comply with the Settlement and Release Agreement

and Defendants' deviation is *de minimis* given that the food was still provided before Plaintiff's Sabbath celebration. *See In re AGR Premier Consulting, Inc.*, 550 F. App'x at 123 (noting that courts "should hesitate to adjudge a defendant in contempt when 'there is ground to doubt the wrongfulness of the conduct.'" (internal citations omitted).) Overall, Defendants' failures to comply with the Settlement and Release Agreement in November 2023 have not been shown by clear and convincing evidence to rise to the level of civil contempt, and Plaintiff's Motion is denied with respect to same.

### 2. March 2024

Plaintiff also asserts that on March 23, 2024, he was not provided with the appropriate Kosher food in accordance with the Settlement and Release Agreement. Defendants averred that Kosher bread was unavailable at the prison on this date. (Falvey Cert. ¶ 10.) In view of this, Plaintiff was provided with an appropriate substitute—"Kosher cereal and/or Kosher pretzels"—as required under the plain language of the Settlement and Release Agreement. (*Id.* ¶¶ 10–11; *see* Settlement and Release Agreement § 3.) The plain language of the Settlement and Release Agreement contemplates circumstances where Kosher substitutes might be required, stating that "the NJDOC has agreed to supply [Plaintiff] on Saturday mornings, with prepackaged bread and peanut butter, *or a prepackaged Kosher substitute* . . . ." (*Id.* (emphasis added).) Here, it appears that the Kosher substitute that Plaintiff received was not to his liking. This is not a violation of the Settlement and Release Agreement, and Defendants complied with their obligations under same.

As a final point, the Court notes that Plaintiff is housed in a custodial facility, and that—from time to time—there will be circumstances out of Defendants' control that may prevent Defendants from strict compliance with the Settlement and Release Agreement, notwithstanding reasonable attempts and a desire to comply. For example, given the NJDOC's reliance on outside

8

vendors, supply-chain or vendor issues—such as those which transpired on March 23, 2024—may occur. While Defendants are required to comply with the Settlement and Release Agreement, they are not superhuman. In view of the length of Plaintiff's double-life sentence, the Court anticipates that these problems will likely reoccur.[3]

The Court is cognizant of the Plaintiff's well-chronicled litigiousness both here and elsewhere, and the Court directs Plaintiff to refrain from engaging in a "gotcha" game for every theoretical, yet *de minimis*, lapse in compliance with the Settlement and Release Agreement. Accordingly, as a condition precedent to future filings, Plaintiff is ordered to contact Defense Counsel prior to raising noncompliance issues with the Settlement and Release Agreement with the Court. In view of this directive, Defense Counsel is directed to respond in a short letter to be filed on the docket within ten days of this Memorandum Order. This letter will provide Plaintiff with (1) the contact information for an individual (or group of individuals) at the NJDOC who Plaintiff should contact regarding concerns he has with noncompliance with the Settlement and Release Agreement and (2) instructions for how Plaintiff should address such correspondence.

Here, the Court's directive requiring Plaintiff to contact Defendants prior to filing motions regarding claims of noncompliance with the Settlement and Release Agreement serves two primary purposes. First, it allows for Plaintiff's concerns to be addressed in a more expeditious and efficient manner than that provided by the inherent delay necessitated by seeking the Court's intervention. Indeed, two of these alleged lapses occurred nearly a year ago. Second, this directive allows Defendants the opportunity to respond and explain any deficiencies—as well as to remedy same—prior to resorting to litigation.

---

[3] *See Love v. State*, 1994 WL 188983, at *1 (Ark. May 2, 1994); *Inmate Search*, ARK. DEP'T. CORRS., https://apps.ark.org/inmate_info/search.php?dcnum=079351 (last visited Oct. 22, 2024).

**b. MOTION TO ENFORCE**

To the extent that Plaintiff's Motion is considered a motion to enforce, the Court denies it as moot given that Defendants appear to be complying with their obligations under the Settlement and Release Agreement at this time.

**IT IS** on this 22nd of October, 2024, **ORDERED** that:

1. Plaintiff's Motion, (ECF No. 272), is **DENIED**;

2. Defense Counsel is directed to respond in a short letter ("the Letter") to be filed on the Docket within ten days of this Memorandum Order providing: (1) the contact information for an individual or group of individuals at the NJDOC who Plaintiff should contact regarding his noncompliance concerns with the Settlement and Release Agreement and (2) instructions for how Plaintiff should address such correspondence; and

3. Upon receipt of the Letter, the Court will enter a text order directing Plaintiff to address future correspondence surrounding noncompliance with the Settlement and Release Agreement to the individual or individuals outlined within the Letter; and

4. The Clerk's Office shall serve on Plaintiff by regular U.S. mail this Memorandum Order to his address of record.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**